ADAM E. CHRISTIE v. CHICAGO, MILWAUKEE & ST. PAUL RAIL-
WAY COMPANY.[1]

May 23, 1895.

Nos. 9439—(136).

**Railroad—Defective Approach to Station.**

It is the duty of a railroad company to keep the approach to its depot
and platform reasonably convenient, accessible, and safe for the public
rightfully passing over it, and properly and lawfully doing business
with such railroad company. *Held* that, within this rule, the evidence
justified the verdict of the jury.

Action in the district court for Mower county to recover damages
for personal injuries. The jury rendered a verdict in favor of
plaintiff for $1,500. From an order, Whytock, J., denying a motion
for a new trial defendant appealed. Affirmed.

*H. H. Field* and *Kingsley & Shepherd*, for appellant.
*John A. Lovely* and *French & Wright*, for respondent.

BUCK, J.   The defendant, a railroad corporation, owns and op-
erates a railroad which runs north and south through the city of
Austin, in this state, at which point it maintains a station house
and grounds, with depot and platform accommodations and ap-
proaches, intended and used for the convenience of passengers and
the public going there to transact business, and especially for re-
ceiving and delivering baggage carried and transported on the de-
fendant's railroad.   West of the platform are two railroad tracks,
which are connected by a switch and frog.   The rails of the two
railroad tracks are planked on both sides for a distance of about
78 feet in length.   On the outside the planks are laid close to the
rails, but on the inside of the rails on the east track there is a space
between the plank and the rail of about three inches, for the flanges
of the wheels of engines and cars to run in.   The depth of the space
between the rails and planks is about three inches.   The planks
vary in thickness.   Some of them are on a level with the rails, and
some a little lower, but generally they are on a level, especially

[1] Reported in 63 N. W. 482.

when new.   The most easterly rail is about two feet and nine inches west of the westerly edge of the platform.   The rails are about four feet and eleven inches apart.   The only approach to this platform for the public doing business with the defendant railroad in delivering or receiving baggage transported over its road is along and across the planked space and railroad bed.

During the night preceding October 12, 1892, the plaintiff's daughter arrived at this station on one of defendant's trains, and went to her father's farm, 2½ miles west, leaving her baggage, consisting of three trunks, at the station.   The next morning she gave the checks for the trunks to her father, and requested him to go and get them.   For this purpose he took a team of horses, and, hitching them to his farm wagon, drove to this depot, and to the westerly side of the platform, along this planked space, which was the usual approach to such platform for the purpose of receiving baggage.   The defendant's station agent and another person put the trunks into the plaintiff's wagon, while he remained in the wagon, holding the horses by the reins.   After the trunks were placed in the wagon, the plaintiff attempted to turn east, to drive away from there, but the wagon wheels were caught between the planks and the rails, and the forward wheel struck something, came out suddenly, threw one wheel under the wagon, and, nearly tipping the wagon over, threw the plaintiff out of the wagon, breaking his arm, and the hind wheel of the wagon passed diagonally over his breast. There does not appear to be any controversy over the extent of his injuries.

It is the duty of a railroad company to keep the approach to its depot and platform reasonably convenient, accessible, and safe for the ingress and egress of passengers, and for the public rightfully and properly doing business with it.   Buenemann v. St. Paul, M. & M. R. Co., 32 Minn. 390, 20 N. W. 379.   In such cases the highest possible degree of diligence and care are not required, but the law imposes upon a railroad company the duty of keeping its approaches reasonably safe for all persons using them for a lawful business purpose;  and persons so using such approaches have a right to assume that they are reasonably safe.   If there is but one approach to a railroad depot platform, and the public are accustomed to use it for the transaction of business with the railroad company, per-

mission to use that approach will be presumed or implied. The question of whether the approach to the platform in this case was reasonably safe under the circumstances was left to the jury; and, as the verdict is fully sustained by the evidence, we do not feel disposed to disturb it. It was a breach of duty on the part of the defendant not to furnish a safe and convenient approach to its depot platform for those having business with it. When there is sufficient evidence of a breach of duty and of negligence, and an injury thereby results to an individual, he is entitled to maintain an action for the recovery of the damages sustained. The plaintiff was not a trespasser, and he naturally and necessarily resorted to that side of the platform because there was no other way or approach for him to go after the baggage in question. By the very method of constructing its platform and approach thereto, and doing business for many years over this approach, the railroad company invited travel, ingress, and egress over the planks and tracks where this injury occurred; and it certainly should have adopted reasonable precautionary measures for the safety of persons not guilty of negligence themselves.

The evidence disclosed the fact that, prior to the time of this injury, the wheels of wagons and omnibuses were frequently caught in this same place between the plank and iron rails; and, when once caught, it was difficult to get them out. Wheels had been broken in the same place where the wheels of plaintiff's wagon were caught. Frequently iron or pieces of boards had to be laid in front of the wheels, in order to get the wheels out, or else the wheels had to be lifted out. It required skill on the part of the drivers of wagons and omnibuses in order to avoid having the wheels of their vehicles caught in the open spaces. This condition of the approach had existed for such a length of time that the railroad company must be presumed to have had its attention called to it and to the danger necessarily arising from such condition. With this knowledge on its part, it was its duty to have furnished another reasonably safe and convenient approach to its platform, or to have kept this one in a reasonably safe condition. Notwithstanding the railroad tracks and the planking thereof may have been properly constructed for ordinary railroad purposes, yet the jury must have found that the approach or way to the platform was not suitable,

convenient, or safe. Here is the test: Considered as an approach for vehicles to pass over or along, it was dangerous, and not reasonably safe; while for other purposes it may have been properly constructed.

During the trial, the plaintiff, upon re-examination, asked a witness the following question: "Mr. Mandeville, if the plank there were beveled down on a level with the rail, to the bottom of the rail on a slope, would the wagon wheel catch then?" This was objected to, upon the ground that it was incompetent, irrelevant, immaterial, and not proper for the opinion of a witness, and because the witness had not shown himself to be an expert. Prior to this question being asked, the defendant had, upon the cross-examination, asked the witness several questions relating to the same matter,—that is, as to his opinion about the danger of people getting the wheels of their wagons into the open places, and whether such openings in that place were necessary,—and various other questions relating to the same matter. As the defendant had treated the witness as one qualified to testify upon the subject, we do not think it error for the plaintiff to re-examine him as to the same matter. He answered: "If the plank was beveled down to what we call a 'feather edge,'—an angle of 45 degrees,—I don't think the wheel could catch in there." This answer only stated a fact so self-evident and obvious to any one that it could not possibly have been prejudicial. The question was not one calling for the opinion of the witness as to whether the road was properly constructed, or whether the manner of laying the plank and leaving the open spaces was a proper, skillful, or safe method of constructing an approach to the defendant's platform. If it was error to overrule the objection to the question, it was error without prejudice.

The defendant also, in his third assignment of error, claims that the court erred in refusing to give the following instruction, viz.: "The jury are instructed that there is no evidence that there was any defect or hole in the passageway or approach to the platform, except the spaces left on the inside of the rails of the track for the passage of the flanges of the wheels of the engine and cars of the defendant, which the evidence shows are necessary for the safe operation of cars on said track; and you cannot find any negligence on the part of the defendant from the existence of the spaces left

for that purpose." Standing alone, this instruction might, if given, have misled the jury. The question before the jury was not whether the cars could be operated safely over these tracks with these open spaces left for the flanges of the wheels of the engines and cars to pass along in, but whether such approach to the defendant's platform for receiving baggage of its patrons was a safe and suitable one; that is, whether the defendant had exercised the proper degree of care in selecting and maintaining a reasonably safe place and approach thereto for its patrons to deliver and receive their baggage. If such place was not a reasonably safe one, and could not be made so with the railway track there, properly and reasonably constructed, it was the duty of the defendant to provide some other reasonably safe place for such use of its patrons. A railroad track may be constructed so that it will be safe for one purpose, but dangerous for another. There was no controversy as to any danger from cars passing along these tracks at the point in question, even if these planks were laid as proven. They were not so laid to aid or facilitate the passage of cars, but as an approach or way for the public to reach the defendant's platform; and, if this was unsafe and dangerous for such purpose, then the defendant was guilty of negligence in not making it safe, or building or constructing a safe one. For these reasons, the instruction asked was properly refused.

The question as to whether plaintiff was guilty of negligence in the management of his team, and whether the team was gentle, as well as the question of the exact place where the injury occurred, were all submitted to the jury, upon the conflicting evidence; and the jury must have found against the defendant upon these matters, and with that finding we shall not interfere.

The order denying the defendant's motion for a new trial is affirmed.