## IDA OGREN v. CITY OF MINNEAPOLIS.[1]

April 25, 1913.

Nos. 17,963—(76).

**Depression in street — negligence — questions for jury — theory of case.**
The plaintiff's intestate, the driver of a coal wagon, was killed by being thrown from his wagon when one of its wheels went into a depression at the

[1] Reported in 141 N. W. 120.

---

Note.—The authorities on the liability of a municipal corporation for defects or obstructions in streets are collated in an elaborate note in 20 L.R.A.(N.S.) 513. And on the question of contributory negligence as affecting liability of municipal corporations for defects and obstructions in streets, see extensive note in 21 L.R.A.(N.S.) 614.

intersection of Western avenue and Aldrich avenue in the city of Minneapolis. The city constructed a water main in the center of Aldrich avenue, which runs north and south, and which intersects Western avenue at substantially right angles. The depression came from a failure to keep the trench filled, or to repave over it, between the outer rails of the tracks. The portion of Western avenue over the trench, and outside the tracks, was repaved. The deceased was driving westerly on the north side of Western avenue, and was thrown forward as he was turning out to pass an automobile standing at the northeastern point of intersection of the two streets. Upon a review of the record, it is *held:*

(1) That the question of the negligence of the city was for the jury.

(2) The question of the contributory negligence of plaintiff's intestate was for the jury.

(3) The case was tried, under appropriate pleadings, and was submitted to the jury, upon the theory that the ordinary rules as to negligence and contributory negligence were determinative of liability, and no claim was then made, as is now made by respondent, that the law relative to runaways, as defined in McDowell v. Village of Preston, 104 Minn. 263, was of any application; and the appeal is decided upon the theory upon which the case was tried below.

(4) Under Laws 1901, c. 113, now R. L. 1905, § 4200, a party cannot assign error in the charge, unless an exception is taken at the trial, or a specification of the error is made in the motion for a new trial.

Action by the administratrix of the estate of Victor S. Ogren, deceased, to recover $7,500 for his wrongful death. The complaint alleged that defendant wrongfully filled a trench, except the top eight inches, with loose sand and left the part of the trench between the street car tracks without any paving whatsoever and with a hole or depression at least eight inches deep, and that the depression so left was, to defendant's knowledge, an extremely dangerous place for teams and wagons to pass over, and any person attempting to drive over the same would be liable to be thrown out in passing over the depression; that plaintiff without knowledge of said hole or depression while driving in a careful manner suddenly dropped into it, by reason of which he was thrown from the seat of the wagon and so seriously injured that he died shortly thereafter. The answer expressly denied the foregoing allegation that defendant negligently left the trench between the car tracks without any paving, or with a depres-

sion therein, or that the street at that location was a hazardous or dangerous place. The case was tried before Dickinson, J., and a jury which returned a verdict for $3,982.50 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Daniel Fish,* City Attorney, and *Henry C. Flannery,* Assistant City Attorney, for appellant.

*John N. Berg* and *Adolph E. L. Johnson,* for respondent.

DIBELL, C.

The plaintiff, as administratrix of the estate of her deceased husband, brought this action against the city of Minneapolis to recover damages for his death, alleged to have been caused by the city's negligence. There was a verdict for the plaintiff for $3,982.50. The city appeals from the order of the court denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

1. The city of Minneapolis constructed a three-foot water main through the center of Aldrich avenue, which runs in a north and south direction, and intersects Western avenue substantially at right angles. Western avenue is paved with brick. After the water main was in place, the trench was filled and the brick pavement was replaced from the curb on either side to the outer rail of the double tracks of the street railway, which traversed Western avenue. This paving was completed on May 12, 1911. The deceased was killed on May 26, 1911. The rails of the street railway had slightly sagged, where the trench was underneath, and the city did not at once, nor until after the decedent's death, repave this portion of the street. It filled in the trench with refuse material or sand and dirt, intending to replace the pavement when the rails were in shape. The subsoil furnished a treacherous foundation. The filling of the trench naturally sank, and at the time of the decedent's death there was a depression six or eight inches deep, and of the width of the trench, say three or four feet.

The facts just stated are either admitted, or are established by sufficient evidence. There is no quarrel with the general principle stated in City v. Calvert, 39 Neb. 305, 58 N. W. 115, and other cases

cited ·by counsel, to the effect that the city, in the prosecution of an improvement, calling for an interference with the surface of the street, may make the street less safe for travel, without necessarily incurring liability to a traveler injured. It all comes to a question of negligence, and in the case just cited the court said (pp. 305, 312): "And where a street is rendered unsafe for travel in· the ordinary modes by improvements in progress thereon the city must exercise reasonable care to protect the public from the consequences of such unsafe condition." "The city had a right, in grading and paving the street, to create a condition which would be dangerous, provided it was reasonably necessary to do so in order to make the improvements, and provided, further, that the dangerous condition was not maintained for an unreasonable time."

No question of actual or constructive notice of the defect to the city is important. When the city quit work on May 12, 1911, it left an unfinished piece of construction, intending to finish it later. The defect in the street came from its own work. Kleopfert v. City of Minneapolis, 93 Minn. 118, 100 N. W. 669. The defendant's negligence was clearly for the jury.

2. The question of the contributory negligence of the deceased presents greater difficulty; but upon a careful analysis it is readily solved. The deceased was driving westerly on the north side of Western avenue, making for the stables, his day's work nearly done. When he came to Aldrich avenue an automobile was standing at or near the northeastern point of intersection of the two avenues. He turned to the left to pass it, the left wheel or wheels of his wagon crossed the outer rail of the street railway tracks, and went into the depression at the trench, and he was thrown forward between the horses, and was dragged down and killed. He was driving an ordinary span of draft horses, hitched to an ordinary coal wagon, with three-inch tires, a box several feet high and 15 feet long, with flaring sides, a high seat in front set on springs, with hinges so arranged that it could be inverted forwards if convenience required.

The defendant puts its claim of contributory negligence upon three general grounds: (a) That the deceased was driving too fast and

without control of his team.   (b) That he had present knowledge of the defect in the street.   (c) That the defect was obvious.

That the deceased was driving fast, hurrying to the stables and then home, is beyond question; and as he bowled along over the brick-paved street, with his rumbling empty coal wagon, on a clear evening, he made some noise, and attracted the attention of the few people on the street, affecting them differently.   Some say that his horses were on a gallop; others, that they were running away; some, that he had lost control of them; others, that he had them under control.  Whatever the situation was, it seems that they stopped of their own accord a half block beyond the point where the deceased was killed.   The evidence furnished indications of negligence, but the question was for the jury.

That the deceased had some familiarity with Western avenue is evident, but the avenue is long.   It is but an inference of fact that he had ever observed the defect, and if he had it would not be controlling against the plaintiff in the determination of this case.

The defect could be seen.   As the decedent turned to pass the automobile, the law cannot say that he saw it, or was negligent in not seeing it.

The question whether the deceased was negligent, considering his rate of speed, what he knew about the street, the kind of wagon and horses he was using, and the manner of his driving, was one for the jury.   It was simply a question of what an ordinarily careful man, placed as he was, would do.   It was for the jury, and not for the court.

We have examined the evidence in connection with the long line of authorities cited by counsel, and we feel that we have reached the correct conclusion.

3. The complaint alleges that the deceased was driving "in a careful and prudent manner."   The answer denies this, and alleges contributory negligence, which is denied by the reply.   Counsel for the plaintiff claims that even if the horses were unmanageable, and there was a runaway, there may be a recovery within the doctrine stated in McDowell v. Village of Preston, 104 Minn. 263, 116 N. W. 470, 18 L.R.A.(N.S.) 190.   This claim is first made on appeal, or perhaps

on the motion for a new trial. The case was tried, and submitted to the jury by the trial court, upon the theory that there was involved the question of the negligence of the defendant and the contributory negligence of the plaintiff. We decide it upon the theory upon which it was tried and submitted, and the doctrine of McDowell v. Village of Preston, supra, is not here involved.

4. The first, second, and third assignments of error refer to certain portions of the general charge claimed to have been erroneously given. There was no exception entered at the time, nor was a specification of error made in the motion for a new trial. We reiterate the rule, stated in Cappis v. Wiedemann, 86 Minn. 156, 90 N. W. 368, and in very many cases following it, that under Laws 1901, p. 121, c. 113, now R. L. 1905, § 4200, an assignment of error, based upon the charge, is not considered, unless an exception is taken at the trial, or there is a specification of error in the motion for a new trial.

Order affirmed.