## MILDRED E. BAKER v. CITY OF SOUTH ST. PAUL.[1]

December 11, 1936.

No. 31,007.

[1]Reported in 270 N. W. 154.

438

*Walter T. Ryan,* for appellant.
*Phillips & Lindmeier* and *Grannis & Grannis,* for respondent.

I. M. OLSEN, JUSTICE.

Defendant appeals from an order denying its motion for judgment notwithstanding the verdict, or, if that be denied, then for a new trial. Plaintiff had a verdict for $5,000.

Seventh avenue south in the city of South St. Paul runs north and south. Third street runs east and west. The two streets intersect at right angles. In the center of the intersection is a manhole some 18 feet deep. There is a trunk line sewer running east and west along the center line of Third street, entering and running out of this manhole at the bottom thereof. This trunk sewer takes up and carries away sewage and storm water coming into the manhole from the other sewer lines to be mentioned and carries the sewage and storm water on east to some outlet. There is what is called a lateral sewer running north and south along the center of Seventh avenue, entering this manhole about 14 feet below the street surface. This lateral sewer carries sewage from the dwellings and buildings along Seventh avenue and also carries rain and surface water from catch basin lines along this street. At the southeast and southwest corners of the intersection of Seventh avenue and Third street, at the curb or gutter, are catch basins to take the surface water from rain and snow coming into the street gutters from the streets and surrounding property in that vicinity. From these catch basins

there are the line sewers some six feet below the street surface, running to and entering the manhole at the center of the intersection at that depth. Briefly stated, the situation at this manhole and street intersection was as follows: There was a trunk sewer entering the manhole 17 or 18 feet below the surface of the street; there was a lateral sewer on Seventh avenue entering the manhole about 14 feet below the street surface; and there were two tile lines from the catch basins entering the manhole about six feet below the street surface.

On June 30, 1935, in the evening and up to nine o'clock or a little after, there were heavy showers, with a precipitation of an inch or more of water in the area of South St. Paul. The plaintiff here, riding in a Ford automobile driven by one Wayne Evans, was traveling from St. Paul to South St. Paul during this rain. They were going to the home of plaintiff's sister, located on Seventh avenue south in South St. Paul, a short distance south of the intersection with Third street, which is the intersection hereinbefore described. They reached South St. Paul just about the time the rain ceased and approached this intersection driving south on Seventh avenue. When near the intersection, the driver, Mr. Evans, saw a hole or opening in the street at the intersection. He thought it was an open manhole and that he could straddle it with his car. When the front wheels of the car came to the hole, earth around it caved in, and the front part of the car dropped into the opening up to the top of the radiator. The rear wheels of the car remained on top of the ground. Evans was driving at a slow speed at the time. Both he and the plaintiff got out of the car without assistance. So far as appears, neither of them suffered any visible or appreciable physical injuries to the body or the organs of the body. Plaintiff walked from the place of the accident to her sister's home. She apparently was suffering from shock caused by the accident. Her prior history has some bearing on her subsequent condition. From about January 1 to April 1, 1935, she had been nervous, losing some weight and suffering from a goiter. On April 1 the goiter was removed by an operation. She gradually regained health and apparently had recovered at the time of the accident. Immediately

after the accident she became very nervous. Shortly after she arrived at her sister's home she became hysterical and was then taken to a hospital for a few days. She has not fully recovered, and continued to be nervous and to have hysterical attacks at intervals up to the time of trial.

Plaintiff seeks by this action to recover damages for the shock sustained and the subsequent condition resulting to her therefrom.

The evidence shows that the hole in the street which resulted in the accident was caused by a break in the lateral sewer about 14 feet below the surface of the street. This break in the sewer tile was some three or four feet south of the manhole. It had caused the sandy soil above the tile to be washed out by the water coming out of the tile and to be carried away by the sewer. The void or hole created had extended upward to the surface. After the earth caved in by weight of the car, the hole at the top was some seven or eight feet in diameter. It was close to the manhole and on the south side thereof, practically in the center of Seventh avenue and near the center of the intersection. There is no evidence that this break in the sewer or this hole existed at any time prior to the heavy rainfall on the evening of June 30, which caused a large volume of water to rush through the sewer. There is nothing to show that defendant had any actual notice or knowledge of the break in this sewer until after the accident. There is uncontradicted evidence that this washing out of the soil above the sewer tile could happen in 15 to 20 minutes when there was a large volume of water coming into the sewer tile, causing heavy pressure on the tile.

Plaintiff seeks to charge the city with notice of the defective condition of the sewer a sufficient time before the accident by claiming that there was a break in this same sewer at this same place, in other words, a break in the same tile line at the same place in the latter part of May of the same year, and that defendant either failed to repair the break or else did not properly repair it at that time, and hence was charged with notice of the defective condition of this sewer from that time on.

It is undisputed that in the latter part of May a hole opened in this intersection when a truck driven over the intersection caused

the ground to cave in and leave a hole some four or five feet in diameter. The truck did not fall into the excavation, but there was a thump or jar felt as the cave-in started. Except for some evidence by three witnesses on the part of plaintiff, that the hole in the street surface on June 30 was practically in the same place, or, as one of them said, exactly in the same place, as the hole caused by the cave-in in May, which evidence will be later herein considered, there is nothing to impeach the testimony of the city engineer, the foreman of the street repair work, and one other man who worked in making the repair after each break. These three witnesses for the defendant testified clearly and positively that the break in the latter part of May was in the tile line from the catch basin on the southeast corner of the intersection to the manhole, close to the manhole, which tile line was about six feet below the surface of the street; that the break on June 30 was in the lateral sewer running along the center of Seventh avenue at a point some three or four feet south of the manhole and 14 feet below the surface of the street.

The city engineer testified that the tile pipe from the catch basin and the pipe from the lateral sewer entered the manhole about a foot apart, measured horizontally, but that the lateral sewer pipe was eight feet deeper in the ground; that the two breaks would not be more than three or four feet apart, measured horizontally. There is no evidence on plaintiff's part contradicting this evidence for defendant except the claim that the two holes on the surface of the ground were practically, or exactly, in the same place. The defendant's three witnesses above mentioned testified that they were present at the repair of each break; that when they repaired the first break they dug down to solid ground; that they found the break to be in the tile line from the catch basin to the manhole, about three feet from the manhole and about six feet below the surface of the street. The city engineer supervised the repairs. He saw what was done and which sewer pipe was broken in each instance. He and the repair foreman testified that at the time of the first break they went down in the manhole to the bottom thereof, and, with a flashlight, examined conditions as to other sewers and flashed the

light into the opening of the lateral sewer; that they found no leak or indication of any break or defect in any other sewer line except the break in the line from the catch basin, which they then repaired.

The evidence is that the width of Seventh avenue is 36 feet between the curbs, and Third street not over 30 feet. The line from the manhole to the catch basin runs southeasterly. The lateral sewer on Seventh avenue runs directly south from the manhole. In that situation, the break in the pipe to the catch basin being within three feet of the manhole and the break in the lateral sewer not over six feet from the manhole, the two breaks would be within about three feet of each other, measured horizontally, and the two holes on top of the ground, being directly above the breaks and of the width as testified, would overlap to some extent. We have used the term "lateral sewer" to mean the sewer running north and south along the center of Seventh avenue.

It seems clear from the evidence presented by both parties that, unless the break in the sewer on June 30 was in the same tile line, the same sewer, as the prior break in the month of May, the plaintiff has not proved any cause of action for the reason that there is then no evidence to show that defendant had any notice or knowledge, or was charged with any notice of the break, which caused the accident, in time to have guarded or repaired the hole in the street before the accident. A city is not an insurer of the safety of its streets. It is not liable unless it had actual or constructive notice of the defect a sufficient time before the accident to render it negligent in not guarding or removing the same. Taylor v. City of Austin, 32 Minn. 247, 20 N. W. 157; Pottner v. City of Minneapolis, 41 Minn. 73, 42 N. W. 784; Killeen v. City of St. Cloud, 136 Minn. 66, 161 N. W. 260; Brandt v. City of Duluth, 158 Minn. 104, 196 N. W. 932; Stadtherr v. City of Sauk Center, 180 Minn. 496, 231 N. W. 210. See also Dittrich v. City of Detroit, 98 Mich. 245, 57 N. W. 125; Nothdurft v. City of Lincoln, 66 Neb. 430, 92 N. W. 628, 96 N. W. 163; Strang v. City of Kenosha, 174 Wis. 480, 182 N. W. 741; Hutchins v. Littleton, 124 Mass. 289; 43 C. J. 1054, as to necessity for further notice of a new defect after sufficient repairs have once been made so as to make the street reasonably safe for travel.

■ Turning to the evidence for the plaintiff on this question of whether the break in May and the break on June 30 were in the same tile line, that is, in the tile of the lateral sewer 14 feet below the street surface, the testimony is as follows:

Wayne Evans, the driver of the car which fell into the opening on June 30, testified that he did not recall where the hole was; that offhand he would say the hole was in the center of the street. He did not testify to seeing the manhole.

Jack Batush, who drove the truck which caused the cave-in in the month of May, testified that after the truck passed over the place there was a hole about five feet wide and six feet deep a few feet south of the manhole. In answer to counsel's question: "Directly south of the manhole in the center of the street?", he answered, "Yes."

George Culbertson, an employe of Swift & Company, testified that he drove past this intersection the latter part of May and saw a hole in the street; that he stopped and looked at it; that he would say that it was right in the center of the intersection; that it was about four and a half feet wide and about seven feet deep; that he did not notice the manhole; that on the evening of June 30 he saw the hole in the street while the Evans car was in it; that the hole was in exactly the same place as the hole he saw in May.

Harold Rahrman testified that he saw a hole in the street in May; that it was straight across from the storm sewer that runs from the curb; that it was close to the center of the intersection; that he did not remember seeing the manhole; that the hole was five to six feet wide and five to seven feet deep; that on June 30 in the evening he saw a hole at this same intersection; that it seemed to be in the center of the street; that it was in the same place as the hole he saw in May.

These witnesses, with the exception of Evans, had no special interest in the matter. Evans, so far as appears, did not see the first hole, the one in May. Batush, so far as appears, did not see the second hole, the one of June 30. None of these witnesses were present at the repair work on either hole. Two of them testified that in passing by on the street they saw some repair work being

done or that some filling had been done. None of these witnesses saw or knew how deep repair excavations were made or what tile line was in fact repaired on either occasion. Both holes were south of the manhole and, according to defendant's witnesses, so close as to partly overlap. Both holes, generally speaking, were in the center of the intersection. As to the two witnesses for defendant who saw both holes, one month had elapsed between the two breaks in the street and sewers. Having casually seen a hole near the center of the street intersection in May, there is nothing to show that these witnesses had any cause to note or keep in mind the exact location of that hole, within a few feet. The hole on June 30 was so close to the same place that, without measurements or definite marks to go by, it would require a very keen and experienced observer, paying close attention at both times, to be able to say with any degree of certainty that the two holes were in exactly the same place. As already noted, neither of these two witnesses observed the manhole at the center of the intersection at the time of the break in May. Rahrman, as noted, said the hole he saw in May was directly across from the storm sewer that runs from the catch basin. That would apparently place it where defendant's witnesses said it was. These witnesses for plaintiff might easily have been honestly mistaken. Defendant's witnesses, on the other hand, could not have been mistaken as to which tile line was repaired each time, and there was no sufficient impeachment to justify the jury in disregarding their testimony.

On the evidence as it now stands, the verdict of the jury is not sustained. The evidence is not sufficient to show that these two holes in the street were caused by breaks in the same tile line, or that the city had timely notice of the defective condition of the lateral sewer on June 30, 1935, which was the cause of the accident.

There may be some probability that further evidence may be available to clarify the situation, and we reverse the order appealed from denying the motion for a new trial, but we do not grant judgment for defendant.

Some errors are assigned as to the charge. We need not pass upon them except to say that if the case is again submitted to a

jury instructions in harmony with this opinion, as to the necessity for showing that the two breaks were in the same tile line and the necessity for timely notice to defendant in any event, may obviate any further objections to the charge.

The *res ipsa loquitur* rule has no application to this case.

The testimony of plaintiff's expert, Mr. Lutz, does not appear to be of much value for the plaintiff. He testified on the assumption that the two breaks were in one and the same line of sewer pipe.

Reversed and a new trial granted.

