MILDRED E. BAKER v. CITY OF SOUTH ST. PAUL.[1]

April 14, 1938.

No. 31,596.

[1]Reported in 279 N. W. 211.

492

 

See 198 Minn. 437, 270 N. W. 154.

*Walter T. Ryan,* for appellant.

*Phillips & Lindmeier* and *Grannis & Grannis,* for respondent.

PETERSON, JUSTICE.

We granted a new trial on the former appeal, Baker v. City of South St. Paul, 198 Minn. 437, 270 N. W. 154, upon the grounds that, although a city is liable for a defect in a street after it has actual or constructive notice of the defect a sufficient length of time to render it negligent in failing to remove the defect or otherwise protect the public against it, plaintiff failed to prove that the defendant had knowledge or notice of the defect. The facts are stated at length in the opinion on the former appeal. There plaintiff claimed that two holes were made in the intersection of Seventh avenue and Third street in South St. Paul, at a point from 5 to 15 feet south of a manhole in the center of the intersection by a break between the second and third tiles in the lateral sewer; that the defendant negligently failed to repair the break of which it acquired knowledge or notice when it repaired the sewer pipes and filled in the first hole between June 1 and June 3, 1935, and that in consequence of its negligent failure to repair the break in the lateral sewer the second hole was caused on June 30, 1935, by reason of which plaintiff was injured. The grounds for reversal are stated in the opinion on the former appeal as follows [198 Minn. 444]:

"On the evidence as it now stands, the verdict of the jury is not sustained. The evidence is not sufficient to show that these two holes in the street were caused by breaks in the same tile line, or that the city had timely notice of the defective condition of the lateral sewer on June 30, 1935, which was the cause of the accident.

"There may be some probability that further evidence may be available to clarify the situation, and we reverse the order appealed from denying the motion for a new trial, but we do not grant judgment for defendant."

There has been a second trial, in which plaintiff again recovered a verdict.

■ Defendant, as on the former appeal, claims that plaintiff has failed to prove that the two holes were caused by the broken joint in the lateral sewer; that it had no knowledge or notice of the defect; that on June 1, 1935, it promptly investigated the cause of the first hole; that it then found that the first tile of the storm sewer at the manhole was broken on the upper side (not at a joint connection) about one and one-half feet from the manhole, and that an examination of the lateral sewer failed to disclose any break or defect as now claimed by plaintiff. Plaintiff claims that the holes were in the same location; that the evidence not only proved that the two holes were caused by the break in the lateral sewer, but disproved that either hole was caused by any defect in the storm sewer; that the facts with respect to these matters were apparent to defendant when it repaired the storm sewer and filled in the first hole; that a careful examination of the lateral sewer, which defendant claims it made, would have disclosed the defects; and that defendant, having knowledge or notice of the defect for approximately one month, failed to repair the break in the lateral sewer, thereby permitting the second hole to be made by reason of which plaintiff was injured.

Much new evidence was produced and many facts were established with greater certainty upon the second trial. On the first trial there was some uncertainty with respect to the location of the first and second holes. There was nothing by which it could be determined how plaintiff's witnesses located both holes in the same place. After the first trial the witnesses went to view the location and in their testimony on the second trial located the holes with respect to the manhole in the center of the intersection, thus making their testimony certain by showing the exact location of the holes

and how the location was determined. Plaintiff also produced two new witnesses who lived within a few hundred feet of the location, who examined both holes almost immediately after they were made and thus were qualified to know the facts and who testified that both holes were in the same location south of the manhole. Defendant produced witnesses to contradict those of plaintiff, who testified that the first hole was not straight south but to the southeast of the manhole and that the location of the first hole was over the storm sewer and the location of the second hole was over the lateral sewer. In the latter respect their testimony agreed substantially with that of plaintiff's witnesses.

Subterranean holes such as those involved in this case are caused by the action of the water in the sewer under head or pressure, first forcing out the cement between the pipe joints, then escaping so as to hold the surrounding sand and soil in suspension and then draining into the sewer again with a suction so as to draw sand and soil with it. The forcing of the cement out of a pipe joint is generally a slow process which extends over years. A cavity or hole may be created by a single or repeated instances of such suction of the water. It all depends on the volume of water and the nature of the soil. In the light of these general physical principles, plaintiff claims that the evidence supports her and negatives defendant's claims. The break in the first tile of the storm sewer was about one foot or a foot and a half from the manhole. All the witnesses placed the two holes at least five feet south of the manhole. It is improbable that the break in the storm sewer tile could have caused the first hole. The ground over this tile was solid and had to be removed by excavation, thus showing that water had not escaped from it and hence that the break in the storm sewer tile was not the cause of the first hole. A hole in the ground formed by action of the water is generally funnel-shaped, the center of which is over the hole from which the water escapes, and since the first hole was at least five feet from the hole in the first tile of the storm sewer, it negatived the idea that it was caused by water escaping from such hole. There was some evidence to show that the first hole extended beneath and was deeper than the bottom of the storm sewer pipes.

It is argued that the hole is generally formed above and not below the pipes. One of defendant's witnesses who made the excavation stated that he made it five feet to the southeast of the manhole and then worked back along the storm sewer where he found the tile broken. He said the ground on which he was standing was solid. This would tend to indicate that the trouble was not caused by the storm sewer. There is persuasive testimony that the rainfall was not sufficient to have caused any head or pressure in the storm sewer, and some of the witnesses expressed the opinion that it was doubtful that such head or pressure could ever be formed therein, thus practically eliminating, in their judgment, the storm sewer as a cause of either hole. In addition to this evidence negativing the storm sewer as a cause and pointing to the lateral sewer as causing the holes is evidence that on account of the first tile of the lateral sewer being set rigid in the manhole there is apt to be some settling of the tile, causing a break at either the second or third tiles, which is precisely what happened in this case; and evidence by one of defendant's experts that if the employe who made the excavation had not stated that he stood on solid ground he would have thought that the holes might have been caused by the break in the lateral sewer. He eliminated the lateral sewer as a cause upon the ground that the employe stated he stood on solid ground. Defendant's engineer admitted that he did not determine the cause of the first hole but made such repairs as appeared to him to be necessary. Defendant places great reliance upon the fact that when it repaired the first hole it caused an examination to be made of the lateral sewer by use of a flashlight to see whether or not there was any break or settling of the pipes. Its witnesses say that they failed to discover any defects in the lateral sewer. If such settling is a gradual process and is caused as stated by the witnesses, then the break in the pipes must have been there when the examination was made, and the failure to discover it was due to the negligence of the defendant's servants in failing to make a proper examination. A cave-in generally takes place because of some weight being imposed above or by vibration. It appears that on June 1, 1935, the rainfall was about one-tenth of an inch, or, as one of the witnesses said: "Just

a sprinkle." This would not cause any soil or sand to be drained into the storm sewer. Just before noon on June 1 an automobile passed over the lateral sewer, and after the front wheels had passed over the location the ground caved in so that the rear wheels of the car sank down. After the car was extricated the hole continued to settle until it was about 6 by 12 feet and about 5 feet deep. Then the hole was filled in. On June 30 there was an unusually heavy rainfall, the exact amount of which is not stated, but which it is said caused automobiles to stall in the vicinity and caused a pressure in the lateral sewer. The water escaping through the defect in the lateral sewer had sufficient volume and pressure to drain off sand and loose soil, causing an underground cavity which caved in along the center line of the lateral sewer when the car in which plaintiff was riding came upon it. The evidence made fact questions for the jury as to whether the break in the lateral sewer caused both holes and whether defendant was negligent in not discovering that fact on June 1 when it repaired the first hole, and in failing to repair the break in the lateral sewer which would have removed the defect which caused the second hole on June 30.

■ There was no error in permitting plaintiff's expert to give an opinion to the effect that the two holes were caused by the defect in the lateral sewer. After a hypothetical question embracing the facts proved had been put to the witness, in which he was asked to state whether or not he had an opinion with respect to such facts, objection was made to that question and the expert answered that he had an opinion. Then he was asked to state the opinion. No objection was made to his stating the opinion. Evidence received without objection cannot be assigned as error. It is to be noted in this connection that defendant called several experts who gave similar evidence in its behalf on this point.

■ Any error in connection with permitting an amendment of the complaint so as to show other causes of the holes was eliminated by the court subsequently striking out the amendment and taking from the consideration of the jury all matters embraced in the amendment.

■ The damages are not excessive. On the first trial plaintiff had a verdict of $5,000 and on the second trial a verdict of $5,500. The accident occurred on June 30, 1935; the second trial was begun on April 12, 1937. The testimony shows that plaintiff is very nervous, hysterical, suffers pain, and has a rapid heart beat as a result of her injuries. She was in such a nervous condition that she was unable to testify, and the medical testimony on her behalf tends to show that her condition is permanent. Defendant produced a medical expert who testified that plaintiff's condition is the result of nervous shock which she sustained at the time of the accident, but he said that she ought to get over it in a few months. In view of the fact that she had been in this condition for approximately two years at the time of the trial and was unable to be a witness in her own behalf because of her condition, and plaintiff's medical testimony, the jury was not bound to attach much weight to the predictions of recovery. It will serve no good purpose to review the medical testimony in detail. Suffice it to say that the verdict has the approval of the trial court and does not appear to us to be excessive.

We find no error in the other assignments of error.

The order is affirmed.

[1]Reported in 279 N. W. 216.