ELAINE JACKSON AND ANOTHER v. CITY OF
ST. LOUIS PARK.

110 N. W. (2d) 510.

September 15, 1961—Nos. 38,143, 38,144.

---

[4]See, Minn. St. 346.16; Lackey v. Peterson, 161 Minn. 315, 201 N. W. 428.

*Leonard, Street & Deinard, Sidney Barrows,* and *Arthur L. H. Street,* for appellants.

*Freeman, Hoppe & Kennedy* and *David W. Nord,* for respondent.

OTIS, JUSTICE.

The plaintiffs, husband and wife, have brought these actions to recover damages for personal injuries sustained by Elaine Jackson, and for consequential damages sustained by Maurice Jackson, as the result of an accident caused by a washout in one of defendant's streets. Following verdicts in favor of defendant, plaintiffs appeal from an order denying their motion for a new trial.

The evidence discloses that at the time of the accident, on June 2, 1958, at approximately 8 o'clock in the morning, Mrs. Jackson was driving her husband's car from her home on Pennsylvania Avenue in St. Louis Park in the company of two of her minor children. She had proceeded about a block and a half south on Pennsylvania Avenue, had turned left on Franklin Avenue, and had proceeded 50 to 100 feet in an easterly direction when her automobile suddenly dropped into a

hole on Franklin Avenue and sank to a point where she was unable to open the doors. It is the contention of the plaintiffs that Mrs. Jackson and the children sustained injuries in the accident for which defendant is liable.

The record discloses that at approximately 7:35 o'clock that morning an inspector, employed by the consulting engineers in charge of installing sanitary sewers for the defendant, drove past the site of the accident and discovered that the area was flooded at the intersection of Pennsylvania and Franklin. He testified that water was bubbling up about a foot high east of the intersection, and that he surmised it was caused by a break in the water main. After reporting the matter to the police, he drove back, observed the Jackson car, and rescued Mrs. Jackson and the children from their predicament. Meanwhile, two of the defendant's employees drove to the nearest shutoff valve and turned off the water supply which was causing the eruption.

There was evidence that the flooded area was approximately 300 feet across and 6 to 8 inches deep at the height of the flooding, and it appears to be undisputed that the hole into which Mrs. Jackson's car was driven was at least 2 or 3 feet in depth.

It was the testimony of Mrs. Jackson that while there was a good deal of water on Franklin, this was not an uncommon phenomenon. The evidence indicated the intersection was low and the street surface was gravel and unfinished and lacked adequate drainage even under normal conditions. She also testified that it had rained over the Memorial Day weekend immediately prior to this occurrence, causing the streets in general to be wet. There was testimony from which the jury could find that the valve had been closed before Mrs. Jackson reached the area in question and that water was then no longer bubbling up through the highway as a warning to her of the danger which she encountered.

Various employees of the defendant described the damage which they found and the repairs which were necessary. It appears that the flooding resulted from a broken water pipe which had developed a crack 6 to 8 feet in length. Because of poor subsoil which consisted largely of peat, pilings 15 to 25 feet deep had been driven into the ground and planks 12 inches by 3 or 4 inches in dimension were laid across them at 8-foot intervals, on which 12-inch water pipes were laid,

resting on blocks placed 4 feet apart. The mains were buried 7 or 8 feet below the surface of the roadway.

The parties conceded that in a two-block area between Pennsylvania and Nevada the water mains on Franklin Avenue had broken five times in January 1958, prior to this accident. A supervisor of the defendant's water department testified that in his opinion most of the prior breaks were caused by the settlement of the ground and by the movement of heavy equipment around that section during the time sewers were under construction. He stated that while it was difficult to determine exactly what caused the breaks, whether from settlement of the ground or from the weight of the equipment, they all occurred in the same general vicinity and no precautions had been taken by the defendant to control traffic to prevent a recurrence. The city manager of St. Louis Park also stated that nothing was done to prevent heavy equipment from using that part of the highway and, although the problem of water breaks gave the defendant a good deal of concern, no action had been taken to correct the situation. A foreman of the defendant's water and sewer department was also of the opinion that breaks in the water main resulted from the movement of heavy equipment on the streets during the time sewers were in the process of construction.

■ The court held as a matter of law that the plaintiffs had failed to demonstrate any defect in the manner in which the water mains were laid, and on the record before us we concur in this opinion. The fact that the pipes and planking were bowed and broken does not give rise to an inference that the engineering itself was unsound, in the absence of competent affirmative testimony that the methods followed were scientifically improper.

■ Over the objection of the plaintiffs, the court held that the defendant could not be found liable for any acts of negligence which preceded the eruption on Franklin Avenue on June 2, 1958, and confined the jury's consideration of defendant's negligence to the question of whether the city acted with reasonable care after notice of that particular break in the water main. In addition, the trial court refused to submit to the jury the questions of whether or not defendant was negligent in the construction and maintenance of the street itself and in

permitting heavy equipment to travel the roadway after knowledge of the prior breaks in the water main.

We are of the opinion that it was error to restrict the jury's consideration of defendant's negligence to the period immediately following the discovery of the break on the morning of June 2, 1958. It is the general rule that in the absence of actual notice of a defect in the highway, it is a prerequisite to imposing liability on a municipality that the condition exist a sufficient length of time to permit the city to discover and correct the situation.[1] Under the facts of the instant case, we hold that it was for the jury to determine whether defendant had notice of a potentially dangerous condition which may have precipitated this accident, in the light of the five previous breaks which had occurred the same year.

A municipality must assume more responsibility than the passive role of waiting for defects to develop and to be brought to its attention, if it has knowledge of facts from which it can reasonably anticipate that harmful consequences may result from its failure to act. We have held that its duty to keep streets and sidewalks in a safe condition for public travel requires a municipality to use reasonable diligence to ascertain and remedy defects. Furnell v. City of St. Paul, 20 Minn. 101 (117). A number of cases have been considered by this court and other jurisdictions in which it has been held that it is a jury question whether subsidence of soil in a street or highway which has occasioned prior breaks in sewer lines, water mains, and drainage facilities, has put the municipality on notice of a generally defective condition in the same area.[2] If defendant did have notice, it was under a duty to take appropriate steps to correct the defective condition and prevent a repetition of the occurrence. Ogren v. City of Minneapolis, 121 Minn. 243,

---

[1]Hall v. City of Anoka, 260 Minn. 188, 109 N. W. (2d) 319; 19 McQuillin, Municipal Corporations (3 ed.) §§ 54.64, 54.104, 54.112.

[2]Baker v. City of South St. Paul, 202 Minn. 491, 496, 279 N. W. 211, 213; City of Dallas v. McAllister (Tex. Civ. App.) 39 S. W. 173; Armstrong v. City of Tulsa, 102 Okla. 49, 226 P. 560; Fleming v. City of Springfield, 154 Mass. 520, 28 N. E. 910; Bleistine v. City of Chelsea, 204 Mass. 105, 90 N. E. 526.

246, 141 N. W. 120; Hoffman v. City of St. Paul, 187 Minn. 320, 322, 245 N. W. 373, 374, 86 A. L. R. 198, 200.

■ In view of the undisputed testimony regarding the number of previous breaks and their probable cause, we hold that it was error to instruct the jury that defendant had no obligation to regulate the movement of heavy equipment in the area in question. Clearly it had the power to do so.[3] In our opinion, it was for the jury to decide whether defendant in fact permitted its streets to be traveled by sewer-digging machinery, and if so whether it was negligent in not completing or adequately constructing the pavement, or in not restricting traffic thereon, to eliminate the continuing hazard of successive breaks in the underlying water mains.

■ In charging the jury on the question of Mrs. Jackson's contributory negligence, the court stated, among other things, the following:

"* * * [It is a driver's duty] to maintain a careful lookout for what is going on about one, and to learn and know of the conditions there, *and to ascertain any danger which may exist* or which might be anticipated. The driver of a car must be alert in the use of his or her senses to discover any danger to himself or herself in driving the car, so that duty rested upon Mrs. Jackson, and the defendant claims that she was guilty of such contributory negligence.

"* * * If you find that the street was unsafe for traffic and that the plaintiff, Mrs. Jackson, knew, or in the exercise of ordinary care under all the circumstances should have known, of such condition, then she was contributorily negligent and cannot recover." (Italics supplied.)

The court refused plaintiffs' request to give the following instruction:

"In the absence of anything to the contrary, travelers have a right to assume that a highway that appears to be open and used for public travel has not been discontinued and is reasonably safe for travel."

---

[3]Minn. St. 169.83, subd. 6; Sproles v. Binford, 286 U. S. 374, 52 S. Ct. 581, 76 L. ed. 1167; City of Dearborn v. Sugden & Sivier, Inc. 343 Mich. 257, 72 N. W. (2d) 185; Annotations, 26 A. L. R. 747 and 72 A. L. R. 1004.

While this language is taken verbatim from an abstract statement of law quoted in Mix v. City of Minneapolis, 219 Minn. 389, 397, 18 N. W. (2d) 130, 135, and we have condemned instructions framed in this manner,[4] the request was in essence sound and it should have been granted. Under the circumstances we hold that it was error to charge the jury that a driver has a duty "to ascertain any danger which may exist" without more fully qualifying the rule. We stated in Brittain v. City of Minneapolis, 250 Minn. 376, 385, 84 N. W. (2d) 646, 652, that pedestrians may assume the city has exercised ordinary and reasonable care to maintain its sidewalks and streets in a safe condition. Bowen v. City of St. Paul, 152 Minn. 123, 125, 188 N. W. 554, 555, held that the rule of ordinary care does not impose upon the pedestrian in the use of the public streets a constant vigilance to discover and guard against defects therein—"he may assume that they are in safe condition for use, * * *." The decision in Mix v. City of Minneapolis, *supra,* applicable to motorists, is to the same effect.[5] Even where the surface of the highway or sidewalk has been covered with water, concealing dangerous pitfalls, it has been held not to be contributory negligence as a matter of law to proceed through the obscured area. Hedges v. City of Kansas, 18 Mo. App. 62, 68; Clifford v. City of Philadelphia, 104 Pa. Super. 338, 342, 159 A. 232, 233. We therefore hold that as a part of the charge which the court gave on contributory negligence, plaintiffs were entitled to an instruction that unless and until there are surrounding circumstances which, in the exercise of ordinary care, should alert him to the existence of concealed dangers, a motorist has a right to assume a highway which appears to be open for public use is safe for travel.

---

[4]In Wolle v. Jorgenson, 256 Minn. 462, 467, 99 N. W. (2d) 57, 61, we said:

"* * * this court has stated on a number of occasions that generally it is not advisable to read to a jury statements of law found in court decisions or textbooks."

[5]See, also, Caddo Elec. Co-op. v. Bollinger (Okla.) 285 P. (2d) 200, 204, 55 A. L. R. (2d) 172, 176; 19 McQuillin, Municipal Corporations (3 ed.) § 54.122; 25 Am. Jur., Highways, § 461.

For the reasons stated, we hold that plaintiffs are entitled to a new trial.

Reversed and remanded.