# FRANK KOPVEILER v. NORTHERN PACIFIC RAILWAY COMPANY AND ANOTHER.

160 N. W. (2d) 142.

June 28, 1968—No. 40,767.

*Bradford & Kennedy,* for appellant.

*Quinlivan, Quinlivan & Williams* and *Roger Quinlivan,* for respondent village.

*Earl F. Requa* and *H. K. Bradford, Jr.,* for respondent railway.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

Plaintiff appeals from an order denying his motion for a new trial as to both defendants.

He brought the action to recover damages for personal injuries he sustained on November 23, 1964, at about 11 p. m., when, after mailing letters in a mailbox on defendant railroad's premises, he stepped from the depot platform and fell upon the tarred surface of a public street maintained by defendant village. Plaintiff was 74 years old at the time. He alleged that the cause of his fall was a sizable hole located in the public street or way in an area customarily used for parking adjacent to the railroad's depot platform.

The hole was 15 to 16 inches from the edge of the platform, 12 or 16 inches in diameter, 5 inches deep, and partially filled with leaves. The location of the hole, while it was in a public street or way surfaced and maintained by defendant village, was also on a portion of the railroad's right-of-way which had never been formally dedicated to the village.

The trial court directed the jury to return a verdict in favor of defendant railroad on the ground that the hole was located in the public street and that the railroad was therefore not liable by reason of the well-established rule that the abutting landowner is not subject to liability for physical harm for any defect in a public street unless created or caused by him, his agents, or his servants. Sternitzke v. Donahue's Jewelers, 249 Minn. 514, 83 N. W. (2d) 96.[1] The trial court, however, submitted the issue of defendant village's liability to the jury. The jury returned a five-sixths general verdict in favor of defendant village.

Essentially, plaintiff raises three issues on this appeal: (1) Where plaintiff had mailed letters on defendant railroad's property, did the railroad owe him a duty as he was leaving its property? (2) Was defendant village under the evidence negligent as a matter of law? (3) Were the court's instructions on the issue of negligence sufficient?

Plaintiff concedes that the abutting-landowner rule is the law of Minnesota but contends that the rule should not apply or should be modified to subject the railroad to joint liability under the unusual facts of this

---

[1] See, also, Restatement, Torts (2d) § 349.

case. The basis is the assertion that the hole is located upon a part of the right-of-way of defendant railroad, although also upon a public street which has never been formally dedicated to the village. He argues, therefore, that he was not a traveler upon the public way but was either a public invitee or a business visitor to whom the railroad owed a nondelegable duty to provide a reasonably safe exit from the depot platform, and that that duty extended to the area of the street adjacent to the platform. He reasons that, while the village may exert "some" control over the street, the platform is under the railroad's control and it could have prevented the risk by barricading an exit from the platform in the area of the hole to prevent persons from stepping off the platform at that place.

We do not agree that the facts, viewed most favorably to plaintiff, render the rule either inapplicable or justify a modification. The evidence compels the conclusion that, in spite of the absence of a formal dedication of the land upon which the street was constructed and maintained, there was a common-law dedication for public use to give the public access not only to the depot but also to the adjacent village park and bandstand area. 5B Dunnell, Dig. (3 ed.) § 2644. As the trial court expressed it in his memorandum denying plaintiff's post-trial motion:

"* * * [R]egardless of who 'owned' the fee, the evidence definitely established the hole was in the public street or way, and, as such, under the control of the village. Nor does it seem to the court a public street, under the circumstances here shown, is to be characterized as an 'exit' from the railway's property so as to impose on the railway a duty, along with that of the village, to maintain the public street."

If plaintiff's argument were adopted, it would necessarily be applicable without regard to the proximity of the defect to the owner's property. Thus, defects located considerably farther into the street would also subject the abutting owner to liability by imposing upon him the duty of erecting barricades to guard against the defects in the public street. We do not agree that the railroad ought to be charged with such a duty to plaintiff since there is no valid reason under the circumstances to treat the railroad otherwise than in accordance with the established rule re-

lating to the duty of any other owner of property abutting on a public street.

Further, we see no basis in policy for altering a rule which, by holding the municipality subject to liability, accomplishes the dual purpose of placing responsibility upon the municipality, whose exclusive control creates the duty to maintain its streets in a reasonably safe condition, and of providing one injured by a breach of such duty with an adequate remedy. While there was some suggestion in the record that the hole may have been created or caused by the railroad's sewer system, it is conceded that there is no evidence which would have justified a finding to that effect. Nor is there sufficient evidence to support a finding that the area was not in the exclusive control of the village. It was constructed and maintained by the village and long used by the public. The village regularly employed a street sweeper to keep it clean. The fact that there was only a common-law dedication of the area does not serve to give the railroad such proprietary control as would render it liable for the defect. Cf. Fortmeyer v. National Biscuit Co. 116 Minn. 158, 133 N. W. 461, 37 L. R. A. (N. S.) 569; McCartney v. City of St. Paul, 181 Minn. 555, 233 N. W. 465. The case of Christie v. Chicago, M. & St. P. Ry. Co. 61 Minn. 161, 63 N. W. 482, relied upon by plaintiff as controlling, does hold that a railroad has the duty to maintain the approaches to its depot in a reasonable state of repair to provide safe passage by the public. However, that rule applies where the defect is upon the railroad premises and not where, as here, the defect is upon a public street. Moreover, in Christie the dangerous condition which caused the injury had been created or permitted to exist by defendant railroad.

With respect to the conclusiveness of defendant village's liability, we view the evidence, as we must, in the light most favorable to sustain the verdict. In relating the incident at trial, plaintiff unequivocally declared that he "stepped off of the platform and into this hole and fell and fractured [his] knee cap." On cross-examination, a different explanation of his fall emerged. When confronted with his pretrial deposition, he admitted that when then asked what caused him to fall, he replied, "I don't know." Further, on cross-examination he stated that he had not seen the

hole at the time he fell since he had been blinded by a streetlight. It was only after he had fallen and realized that his foot rested in the hole that he concluded that the hole must have been the cause of his fall. These and other discrepancies in his testimony were stressed by defendants and are most likely the basis upon which the jury denied recovery from the village.

Apart from whether plaintiff's fall was in fact caused by the hole or his own negligence (admittedly, jury questions), the critical issue raised on this phase of plaintiff's appeal is whether or not the evidence required an instruction that the village had constructive notice of the defect as a matter of law. Although the area was regularly swept, there was no evidence that the village had actual knowledge of the existence of the hole. The rule is that a municipality is not liable unless it has actual or constructive notice of the defect and has sufficient time prior to the accident to make proper repairs. Stanke v. City of St. Paul, 71 Minn. 51, 73 N. W. 629; 13A Dunnell, Dig. (3 ed.) § 6823. Inadequate inspection or failure to discover the existence of a defect is not a separate ground of liability but only bears on proof of constructive notice—that the municipality in the exercise of reasonable diligence to discover and remedy defects should have known of its existence. Nichols v. Village of Buhl, 152 Minn. 494, 193 N. W. 28; see, also, Jackson v. City of St. Louis Park, 261 Minn. 93, 110 N. W. (2d) 510. While the nature of the hole was surely such as to constitute a dangerous condition to persons using the street as a walkway and the hole could have been easily and quickly repaired, the issue of whether the village had constructive notice of its existence was clearly for the jury. On none of his numerous visits, plaintiff testified, had he noticed the hole; nor had the street sweeper, the station manager, or the section foreman—except that the latter had observed a "little dip in there" about a year before the accident. The reasons for the nondiscovery by plaintiff and the other witnesses were that the hole was usually hidden by parked cars and the area was spotted with dark splotches of oil and grease, easily resembling the hole in question. As was stated in Ljungberg v. Village of North Mankato, 87 Minn. 484, 485, 92 N. W. 401, 402:

"* * * We cannot lay down any rule to determine the time a defect

must continue to constitute such notice that will be absolute. Each case must depend upon its own facts. The negligence of a municipality in allowing defects in sidewalks to continue is relative, and, of necessity, its location; the extent to which it is traveled; its appearance, suggesting the probable discovery of the defect; and the difficulty or ease with which its imperfections will be remedied by the authorities charged with the duty to repair,—are essential, and affect this question."

Plaintiff raises several claimed errors with regard to the instructions to the jury. The alleged errors of the court in refusing to instruct that the village was charged with knowledge of the defect, that it had a duty to inspect, and that no time was needed to repair a defect such as the one present here, as well as the other claimed errors, all centered around the final asserted error that the charge was too general. None of the claimed inadequacies of the court's charge represented denials by the trial court of any clear attempt by plaintiff to narrow the issue to the crucial one of constructive notice. Absent such attempts or requests to submit specific or critical fact issues, we find plaintiff's criticism either that the charge was too general or that the court improperly denied his requested instructions have insufficient merit to warrant granting a new trial.

Affirmed.