Donald NEWELL, Administrator of Estate of Victor Newell, Deceased Appellant

v.

MONTANA WEST, INC., Giambrone Enterprises, LP, John Giambrone, Colleen Giambrone, Joseph Giambrone, Angela Giambrone, George Krizenowski, and the Storm Appellees

No. 281 EDA 2016

Superior Court of Pennsylvania.

Argued August 31, 2016
FILED JANUARY 19, 2017

Adam D. Wilf, Philadelphia, for appellant.

Sharon Piper, Philadelphia, for appellees.

BEFORE: BOWES, J., OTT, J., and SOLANO, J.

OPINION BY SOLANO, J.:

Appellant, Donald Newell, Administrator of the Estate of his father, Victor Newell, Deceased, appeals from the order of August 5, 2014, granting summary judg-

ment in favor of the owners and operators of Montana West, "a restaurant/bar/nightclub" in Richland Township, Bucks County.[1] We affirm.

Victor Newell ("Decedent") attended a concert at Montana West on May 7, 2010. Montana West is located on the west side of State Route 309 (also known as North West End Boulevard), a four-lane public highway maintained by the Commonwealth. Without permission of the landowners, Decedent parked his car on the property of DHL Machine Company and/or DHL Machine International ("DHL"), which is located on the east side of Route 309, across the highway from Montana West. Two bands were performing at Montana West that night. Not wanting to see the second band, Decedent left Montana West at approximately 11 p.m., when the first band's performance ended. While crossing Route 309 to return to his car, he was struck and killed by an automobile driven by Haleigh Oliemuller. Trial Ct. Op., 9/22/14, at 1-2.[2]

On April 6, 2012, Newell commenced this action by a complaint charging Montana West and DHL with negligence. With respect to Montana West, Newell's theory was that Montana West provided insufficient parking for those patronizing its facility, thereby making it necessary for Decedent to incur the risk of parking on the other side of Route 309 and of crossing

Route 309 to reach his car. On August 5, 2014, the trial court entered summary judgment for Montana West and DHL on the grounds that those defendants did not owe a duty to Decedent when he crossed Route 309 and was fatally injured, and that they therefore could not be held liable for breaching any such duty through negligence.[3] Newell appeals only from the portion of the trial court's decision entering judgment in favor of Montana West.

Newell raises the following issue for our review:

> Did the Trial Court err in finding as a matter of law defendant Montana West did not owe Victor Newell a duty of care when Montana West knew its property could not safely accommodate parking for large crowds, knew during major events its customers would routinely park across a dangerous abutting highway because there were no safe alternatives to park once Montana West's parking lot was full, historically (but not the night in question) took safety precautions for its customers in recognition thereof, and knew a Montana West customer had already been fatally injured crossing the same area of the highway on which Victor Newell was killed?

Newell's Brief at 3-4.

Our standard of review of an appeal from an order granting summary judg-

1. The business establishment is operated by defendant Montana West, Inc., and defendants John and Colleen Giambrone are the owners of that corporation. Montana West, Inc. is located on property in Richland Township that it leases from defendant Giambrone Enterprises, LP, which is owned by defendants John, Colleen, Joseph, and Angela Giambrone and defendant George Krizenowski. Answer ¶ 34; Ex. "E" to Newell's Resp. to Mot. for Summ. J. of Montana West (John Giambrone Dep., 5/17/13, at 7-9, 68-69). Though named as a defendant, "The Storm" is merely the name of a nightclub on the premises. Trial Ct. Op., 4/17/14, at 2. This opinion uses "Montana West" to refer to both

the business establishment and to all defendant-appellees collectively.

2. Newell named Oliemuller as a defendant in this action but later settled the claim against her.

3. The trial court initially entered summary judgment for the defendants on April 17, 2014. Newell them moved for reconsideration. In its August 5, 2014 decision, the trial court granted the motion for reconsideration and then again granted summary judgment to the defendants.

ment is well settled: "Summary judgment may be granted only in the clearest of cases where the record shows that there are no genuine issues of material fact and also demonstrates that the moving party is entitled to judgment as a matter of law." *P.J.S. v. Pa. State Ethics Comm'n*, 555 Pa. 149, 723 A.2d 174, 176 (1999) (citation omitted). Whether there is a genuine issue of material fact is a question of law, and therefore our standard of review is *de novo* and our scope of review is plenary. *Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 592 Pa. 100, 923 A.2d 1099, 1103 (2007). When reviewing a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. *Id.*

As noted, Newell sued Montana West for negligence.

> In order to hold a defendant liable for negligence, the plaintiff must prove the following four elements: (1) a legally recognized duty that the defendant conform to a standard of care; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff.

*Nationwide Mut. Fire Ins. Co. v. Modern Gas*, 143 A.3d 412, 415 (Pa. Super. 2016); *accord Green v. Pa. Hosp.*, 123 A.3d 310, 315–16 (Pa. 2015). The trial court entered summary judgment for Montana West because it held that Newell could not satisfy the first element, the existence of a legally-recognized duty. *See generally Alderwoods (Pa.), Inc. v. Duquesne Light Co.*, 630 Pa. 45, 106 A.3d 27, 31 (2014) ("duty is an essential element of a negligence claim"). "[W]hether to impose affirmative common-law duties as a predicate to civil liability is a matter of law" as to which our

scope of review is plenary. *Seebold v. Prison Health Servs., Inc.*, 618 Pa. 632, 57 A.3d 1232, 1243 (2012); *accord Walters v. UPMC Presbyterian Shadyside*, 144 A.3d 104, 128 (Pa. Super. 2016) (*en banc*).

Newell contends that the trial court erred as a matter of law because Montana West had a duty to protect him from foreseeable harm such as a fatal accident on Route 309. Newell's Brief at 3-4, 7-9. He contends that Montana West had insufficient parking on its premises to accommodate its business invitees and that invitees therefore often parked on the other side of Route 309 to attend Montana West events. Newell claims that Montana West was aware of the dangers posed to its business invitees who parked on the other side of the highway, had taken actions in the past to dissuade invitees from doing so, and had sometimes patrolled the other side of the highway to prevent its invitees from parking there. He argues that Montana West was negligent in failing to take similar actions on the evening of Decedent's death.

In scholarly opinions by the Honorable Marlene Lachman on April 17 and August 5, 2014,[4] the trial court concluded that Montana West had no legal duty to Decedent under the facts of this case and therefore may not be held liable for negligence. After careful consideration, we agree.

Newell's brief blends and combines several theories of duty in an effort to overturn the trial court's decision: (1) duty of a landowner to pedestrians on adjoining roadways; (2) duty of a landowner to provide adequate parking on its premises; and (3) voluntary assumption of duty by a landowner through prior safety measures. We address each of these separately.

---

4. On September 22, 2014, Judge Lachman filed an opinion under Appellate Rule 1925(a)

that attached and incorporated her two prior opinions.

### Duty of a Landowner to Pedestrians on Adjoining Roadways

■ After leaving the concert, Decedent was killed while crossing a highway adjacent to Montana West's property. The trial court therefore surveyed the law regarding the duty of a landowner to protect its invitees from dangers on adjoining public highways,[5] and it concluded that Montana West had no such duty under the facts at issue here. We agree.

The duty of a Pennsylvania landowner to protect business invitees from dangers on adjoining roadways is a question of first impression for this Court. However, as the trial court observed, the Commonwealth Court, some lower courts in Pennsylvania, and several courts in other jurisdictions have broadly agreed that no such duty exists based on facts similar to those here. Although we are not bound by those decisions, we find them persuasive,[6] and we now join them in holding that a Pennsylvania landowner owes no duty to an invitee injured on an adjoining roadway under the facts presented by this case. We reach this result mindful of decisions by the Supreme Court of Pennsylvania that have declined to recognize similar duties in analogous circumstances. We begin by discussing the decisions that deal directly with the alleged duty to protect invitees from dangers on adjoining roadways, and we then examine the analogous Pennsylvania Supreme Court decisions.

The trial court based its decision primarily on the Commonwealth Court's decision in *Allen v. Mellinger*, 156 Pa.Cmwlth. 113, 625 A.2d 1326 (1993), *appeal denied*, 537 Pa. 653, 644 A.2d 738 (1994). The trial court summarized the *Allen* holding as follows: "As a matter of Pennsylvania law, owners of property abutting state highways are not liable to pedestrians or motorists who are injured on the highway." Trial Ct. Op., 4/17/14, at 4.

In *Allen*, the plaintiff, Elizabeth Allen, attempted to make a left-hand turn from State Route 501 into the parking lot of a store owned by the defendants, the Carpenters, when her vehicle collided with a truck coming from the opposite direction. The crest of a hill limited the drivers' visibility at the point on Route 501 where a turn would be made into the store's parking lot, and several accidents had occurred at that location. Relying on Section 343 of the Restatement (Second) of Torts (1965), which makes a possessor of land "subject to liability for physical harm caused to his invitees by a condition on the land" if he knows or should have known of the danger and fails to take protective action, the plaintiff claimed that the store owners had a duty to post signs or take other measures to warn those turning into its parking lot of the dangerous condition. The Commonwealth Court disagreed, explaining:

> [U]nder Pennsylvania law, state highways are the property of the Commonwealth. The Commonwealth has the exclusive duty for the maintenance and repair of state highways. The duty is not owed by abutting landowners. State Route 501, the road abutting the Carpenters' parking lot, has been designated a state highway by statute. Thus, even though the Carpenters' boundary line extends to the center of State Route 501, the ownership, control and possession of the highway traversing their

---

**5.** It is undisputed that Route 309 is a public highway maintained by the Commonwealth. *See* Trial Ct. Op., 4/17/14, at 4.

**6.** We may use decisions from other jurisdictions "for guidance to the degree we find them useful and not incompatible with Pennsylvania law." *Trach v. Fellin*, 817 A.2d 1102, 1115 (Pa. Super. 2003) (*en banc*), *appeal denied*, 577 Pa. 725, 847 A.2d 1288 (2004).

property, along with the duty of care to maintain the highway, belongs to the Commonwealth.

*Allen,* 625 A.2d at 1328–29 (citations omitted). The court held that Section 343 was inapposite because the accident occurred on the public highway, and not on property in the possession of the defendants. *Id.*

In this connection, the court reviewed Section 349 of the Second Restatement,[7] which provides:

**Dangerous Conditions in Public Highway or Private Right of Way**

A possessor of land over which there is a public highway or private right of way is not subject to liability for physical harm caused to travelers upon the highway or persons lawfully using the way by his failure to exercise reasonable care

    (a) to maintain the highway or way in safe condition for their use, or

    (b) to warn them of dangerous conditions in the way which, although not created by him, are known to him and which they neither know nor are likely to discover.

625 A.2d at 1328 (quoting Section 349). The Commonwealth Court concluded:

Allen must prove a duty of care on the part of the Carpenters, and a breach thereof causing Allen's injuries. Allen has failed to do this. The Carpenters are

not liable to Allen because, by her own admission, she collided with the truck in the center of the northbound lane of the highway, located off the Carpenters' property. As Section 349 of the Restatement makes clear, the Carpenters, as abutting landowners, owed no duty to Allen, which could be breached, to maintain a public highway in a safe condition.

*Id.* at 1329. The Commonwealth Court's holding in *Allen* is consistent with that of other courts throughout the country that have considered landowners' liability for risks on adjoining roadways.[8]

*Allen* dealt with injuries to a motorist on an adjoining highway. But, of particular relevance here, the same result has been held to apply when the injury is to a pedestrian seeking to cross the adjoining highway from or to the landowner's property, including pedestrians who were the landowner's business invitees. *See, e.g., Davis v. Westwood Group,* 420 Mass. 739, 652 N.E.2d 567 (1995) (dog racing establishment had no duty to erect pedestrian crosswalk across highway between its parking lot and its race track and was not liable to invitee injured while crossing highway); *Ferreira v. Strack,* 636 A.2d 682, 686 (R.I. 1994) (owner of premises abutting public way had no duty to control traffic and not liable to pedestrians crossing street after church services).[9]

---

7. The Commonwealth Court recognized that Section 349 had not yet been adopted by the Supreme Court of Pennsylvania, but it cited decisions in other jurisdictions that applied the section. *Allen,* 625 A.2d at 1328. In the absence of a contrary pronouncement by the Supreme Court, we are free to adopt Section 349 in an appropriate case. *See Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.,* 610 Pa. 371, 20 A.3d 468, 480 (2011).

8. *See, e.g., Packard v. Darveau,* 759 F.3d 897, 899 (8th Cir. 2014) (Nebraska law); *Patterson v. T.L. Wallace Constr., Inc.,* 133 So.3d 325 (Miss. 2013); *Cline v. Dunlora S., LLC,* 284 Va. 102, 726 S.E.2d 14 (2012);

*Underwood v. Coponen,* 367 S.C. 214, 625 S.E.2d 236 (App. 2006); *Dawson v. Ridgley,* 554 So.2d 623 (Fla. App. 1989); *Naumann v. Windsor Gypsum, Inc.,* 749 S.W.2d 189 (Tex. App. 1988); *Lacey v. Bekaert Steel Wire Corp.,* 799 F.2d 434 (8th Cir. 1986) (Arkansas law); *Dudley v. Prima,* 84 Nev. 549, 445 P.2d 31 (1968).

9. *Accord, Haymon v. Pettit,* 9 N.Y.3d 324, 849 N.Y.S.2d 872, 880 N.E.2d 416, 418 (2007) (ball club had no duty to youngster injured while chasing foul ball hit from its stadium into adjacent public street); *Coale v. Rowlands,* 1998 WL 986012, 723 A.2d 395 (Del. 1998) (shopping center had no duty to

An oft-cited New Jersey decision, *MacGrath v. Levin Props.*, 256 N.J.Super. 247, 606 A.2d 1108 (App. Div. 1992), is illustrative. Jane MacGrath was struck by a car while she walked across a public highway, Route 22, on her way to a bus stop after leaving the defendant's shopping center. She contended that the shopping center owed her "a duty to provide her with a safe means of passage across Route 22, or to warn her of the dangers inherent in traversing the highway." *MacGrath*, 606 A.2d at 1109. The Appellate Division of the New Jersey Superior Court disagreed. Quoting *Yanhko v. Fane*, 70 N.J. 528, 362 A.2d 1 (1976), the court observed:

> The judicial imposition of a tort duty of care and maintenance of a portion of the public domain upon a property owner for no better reason than that his property is proximate to it would seem to be an arbitrary determination. The unrestrictable right of passage on the highway belongs to the public. In principle,

therefore, a remedy for injury to a pedestrian caused by improper maintenance thereof should be subsumed under the heading of public liability.

*MacGrath*, 606 A.2d at 1110 (quoting *Yanhko*, 362 A.2d at 3) (citations omitted). Because Route 22 was owned and controlled by the state, the court held that the shopping center owed no duty to the plaintiff for her injuries:

> Just as "no one could reasonably suggest that the owner of commercial property owes a duty to pedestrians crossing the street to keep an abutting paved road in repair," it cannot be fairly suggested that the owner owes a duty to protect the pedestrian from the obvious hazards of the abutting highway. Liability rests with the State, if there exists a dangerous condition in the public way which caused the accident, or with the operator of the vehicle whose negligence caused the injuries to the crossing pedestrian.

provide safe crosswalk across adjoining highway and not liable to estate of boy killed while crossing highway on return from shopping center); *Lane v. Groetz*, 108 N.H. 173, 230 A.2d 741 (1967) (homeowner owed no duty to clear ice from street in front of home and not liable to nurse visiting home to care for patient there); *Dixon v. Houston Raceway Park, Inc.*, 874 S.W.2d 760, 763 (Tex. App. 1994) (defendant owed no legal duty to person killed in motor vehicle accident that occurred on public road outside defendant's control); *Holter v. City of Sheyenne*, 480 N.W.2d 736, 738 (N.D. 1992) (candy store owed no duty to child killed when crossing street after leaving store); *Swett v. Vill. of Algonquin*, 169 Ill.App.3d 78, 119 Ill.Dec. 838, 523 N.E.2d 594 (1988) (restaurant owed no duty to protect pedestrians from motorists on public roadway); *Owens v. Kings Supermarket*, 198 Cal.App.3d 379, 243 Cal.Rptr. 627 (1988) (supermarket owed no duty to customer injured by negligence of third party in public street adjacent to supermarket premises); *Laumann v. Plakakis*, 84 N.C.App. 131, 351 S.E.2d 765 (1987) (defendant had no duty to provide for crossing

guard, warning lights, or other traffic control devices over city street); *State v. Flanigan*, 489 N.E.2d 1216, 1218–19 (Ind. App. 1986) (owner of commercial premises adjacent to public highway generally owes no duty to patron injured when struck by automobile as patron was crossing or walking along highway); *Mahle v. Wilson*, 283 S.C. 486, 323 S.E.2d 65 (App. 1984) (defendant owed no duty to plaintiff to request that highway department post speed limit signs or furnish a pedestrian crosswalk in front of its place of business); *Curl v. Indian Springs Natatorium*, 97 Idaho 637, 550 P.2d 140 (1976) (natatorium had no duty to maintain public road connecting portions of its premises and not liable for injuries to invitee who had leg lodged in grill while walking on the highway); *Kopveiler v. N. Pac. Ry. Co.*, 280 Minn. 489, 160 N.W.2d 142, 144 (1968) (railroad had no duty to fix hole in street adjacent to its depot and not liable for injuries to pedestrian who fell there); *Chouinard v. N.H. Speedway*, 829 F.Supp. 495 (D.N.H. 1993) (speedway owed no duty to control traffic on the adjacent road and not liable to pedestrian crossing road).

*Id.* at 1111–12 (quoted citation and footnote omitted).[10]

The Commonwealth Court has followed this line of decisions. *See Walinsky v. St. Nicholas Ukrainian Cath. Church*, 740 A.2d 318 (Pa. Cmwlth. 1999) (church not liable for injuries incurred by worshiper who fell on ice on street while entering church because church had no duty to clear ice from street); *Fazio v. Fegley Oil Co.*, 714 A.2d 510 (Pa. Cmwlth. 1998) (landowner had no duty to pedestrian who fell on adjacent roadway due to water running off owner's land that made road icy), *appeal denied*, 734 A.2d 863 (Pa. 1999). In addition, the trial court here concluded that this case is "almost identical to" another Pennsylvania trial court decision that was affirmed by a non-precedential decision of this Court. Trial Ct. Op., 8/5/14, at 11 (citing *Clapper v. Weakland*, 2011 WL 9162707 (C.P. Cambria 2011), *aff'd mem.*, 60 A.3d 862 (Pa. Super. 2012), *appeal denied*, 621 Pa. 651, 72 A.3d 599 (2013)). In *Clapper*, the plaintiff, a minor, left a concert he was attending on the defendant's property so that he could walk to a convenience store located on the other side of a six-lane highway. As he did so, he was struck by a car and injured. The plaintiffs argued that the landowner owed a duty to the minor to protect him from the known dangers of crossing the highway, but the trial court, relying on *Allen*, held that no such duty existed.[11]

We find this substantial body of authority persuasive. A pedestrian who walks on a public highway places himself at risk of injury from vehicles traveling on the highway. Any duty of care owed to that pedestrian must belong to those who maintain the road and those motorists who are licensed to drive safely on it. The duty does not extend to landowners who have premises adjacent to the roadway.

We are guided to this conclusion by a pair of decisions by the Supreme Court of Pennsylvania that addressed a closely analogous issue: liability for injuries occurring on railways adjoining a landowner's property. In *Scarborough ex rel. Scarborough v. Lewis*, 523 Pa. 30, 565 A.2d 122 (1989), a boy playing on City of Philadelphia property crawled through a hole in a fence separating the property from an adjoining railroad track and then was injured by a train. Relying on Section 323 of the Second Restatement, which provides liability for negligently undertaking to provide services for the protection of another, the boy's parents argued that Philadelphia was liable because it breached a duty to protect the boy by failing to repair a fence it had erected for protection. Our Supreme Court disagreed, stating:

---

10. The court distinguished cases in which the defendant owned property on both sides of the highway and therefore undertook to provide its invitees safe passage from one of its properties to the other. *See MacGrath*, 606 A.2d at 1111–12 (discussing *Warrington v. Bird*, 204 N.J.Super. 611, 499 A.2d 1026 (App. Div. 1985), *certif. denied*, 103 N.J. 473, 511 A.2d 653 (1986)). This Court cited *MacGrath* with approval when applying New Jersey law in *Cruet v. Certain-Teed Corp.*, 432 Pa.Super. 554, 639 A.2d 478, 480 (1993).

11. The trial court cited other Pennsylvania trial court decisions that also reached a similar result. *See* Trial Ct. Op., 4/17/14, at 10-11 (citing *Calabretta v. Bulldog Constr. Co.*, 2006 WL 4862149 (C.P. Montgomery 2006) (construction company building a residential subdivision owed no duty to pedestrian struck by car while attempting to cross state road from the construction site to her home); *Rosas v. O'Donoghue*, 2005 WL 1993846, (E.D. Pa. Aug. 17, 2005) (Burger King franchisee had no duty to customer who was injured while walking on public highway after leaving its restaurant), *aff'd mem. sub nom. Bradley v. O'Donoghue*, 216 Fed.Appx. 150 (3d Cir. 2007)).

the law imposes no duty upon a possessor of adjacent land to erect fencing or provide warnings so as to deter persons from entering a third party's property on which there exists a dangerous condition not created or maintained by the landowner and over which the landowner has no control.

523 Pa. 30, 565 A.2d at 126.

The Court reiterated this holding in *Gardner ex rel. Gardner v. Consol. Rail Corp.*, 524 Pa. 445, 573 A.2d 1016 (1990). In two separate instances, boys climbed through holes in fences separating City of Philadelphia property from railroad tracks, and in each case the boy was injured by a train. In actions against the City, the boys' parents relied on several sections of the Second Restatement, including Sections 365 (landowner's liability for harm caused by disrepair of structure on land), 343 (liability to invitees for known dangerous condition on land), 339 (harm to trespassing children caused by artificial condition on land), and 323 (negligently providing services for protection of another). 524 Pa. 445, 573 A.2d at 1019–20. The Court held each of these sections inapplicable to an injury on neighboring land that was not proximately caused by anything on the City's own property. *See id.* The Court observed that whether to impose a duty, and the related question whether an injury is proximately caused by a breach of that duty, "are ultimately policy considerations." *Id.* at 1020. The Court emphasized that in each instance, "[t]he fence did not cause the injury," *id.* at 1019, and, it held, "the city owes no duty of care to persons who crawl through or walk toward holes in city fences bordering city land and are injured on neighboring land by instrumen-

talities over which the city has no control and which the city did not maintain or bring into being." *Id.* at 1021.[12]

Neither *Scarborough* nor *Gardner* cited or relied on Section 349 of the Second Restatement, dealing with injuries to invitees on adjoining highways. Nevertheless, in light of these decisions declining to impose a duty on a landowner to protect minors from injury on an adjoining railway, we are confident that that the Pennsylvania Supreme Court also would impose no duty on a landowner to protect persons injured on an adjoining highway. Our decision is in accord with this view and the well-settled precedents in other jurisdictions.

### Duty of Landowner To Provide Adequate Parking

■ Newell contends that even if a landowner generally owes no legal duty to pedestrians injured on adjoining roadways, Montana West is liable because of a lack of safe conditions on Montana West's own property. According to Newell, Montana West lacked sufficient parking facilities, a deficiency that made its premises unsafe for Decedent and other business invitees by forcing them to find parking in such unsafe areas as the opposite side of Route 309. If Montana West had provided sufficient safe parking on its own premises, Newell argues, Decedent would not have had to incur the risk of parking in DHL's lot on the east side of Route 309 and walking across the highway to get to the concert.

The record shows that local zoning authorities authorized Montana West to operate with 231 parking spaces on its paved

---

**12.** Although the City had governmental immunity, the Court in both *Scarborough* and *Gardner* did not base its decisions on that fact. In *Gardner*, the Court also held that its rejection of the proposed duty applied regardless of whether the children were considered trespassers or "invitees or licensees." *Gardner*, 573 A.2d at 1019.

lot.[13] Montana West claims that it reconfigured some of the spaces on that lot to accommodate additional parking.[14] According to an expert report presented by Newell, the paved lot could accommodate about 260 cars. Ex. "C" to Newell's Resp. to DHL's Mot. for Sum. J. (expert report of Kevin O'Connor, P.E., 12/2/13, at 5). Newell's expert contended, however, that this number was insufficient and that a major event at Montana West would require about 330 parking spaces. *Id.* at 14. We do not resolve these conflicts, but, because this is an appeal from an entry of summary judgment in favor of Montana West, we assume for purposes of the issues on this appeal that Newell is correct in contending that Montana West had insufficient parking and that Decedent did not park in its lot for that reason.

Newell argues that the insufficient parking at Montana West distinguishes this case from decisions like *Allen* and brings this case under Section 343 of the Second Restatement, because the lack of sufficient parking was an unsafe condition on Montana West's own property. Like the plaintiffs in *Gardner*, Newell bolsters this argument by also citing other Restatement provisions, including Sections 323 (negligently providing services for protection of another), 343A (anticipated harm from known or obvious dangers), and 364 (creation or maintenance of dangerous artificial conditions). *See* Newell's Brief at 10-12. Neither party cites us to any Pennsylvania appellate authority that addresses

the purported duty to provide adequate parking that is advocated by Newell.

Newell's inadequate parking theory is in tension with the Supreme Court's decisions in *Scarborough* and *Gardner*. Those cases rejected efforts to impose liability for failing to do something on the landowner's premises (repair a fence) that would have deterred the injured plaintiffs from reaching the adjoining railway where they were injured. Newell's theory would impose liability on Montana West for failing to do something on its premises (have more parking spaces) that would have made it unnecessary for Decedent to cross the adjoining highway where he was fatally injured.

The theory also is at odds with several of the cases holding that a landowner owes no duty to pedestrians injured on adjoining roadways. Those decisions have rejected efforts by plaintiffs to recast their liability theories in terms of unsafe conditions on the landowner's property. For example, in *Allen* the plaintiff argued that the landowner bore responsibility for the plaintiff's injury while turning into its parking lot because the lack of sufficient markings or signs in the lot to advise about the safest entry point made the lot unsafe. *Allen*, 625 A.2d at 1327. In one of the leading cases dealing with pedestrian injuries, *Davis*, the plaintiff claimed that the defendant dog track owner was liable because it owned a parking lot on the other side of a highway from the track and did not build safe facilities to connect the two parcels of

---

**13.** In a letter from Richland Township's Assistant Zoning Officer, dated June 14, 2001, the township granted permission to Montana West to operate with 231 spaces because that was the number of parking spaces at another restaurant that previously occupied the premises. *See* Ex. "C" to Newell's Resp. to Mot. for Sum. J. of Montana West (Ex. 2 to Deposition of Richard Brittingham Dep., dated Oct. 18, 2013).

**14.** In addition to the reconfiguration, Montana West also claims it added a gravel lot. *See* Montana West's Brief at 3; Ex. "D" to Newell's Resp. to Mot. for Sum. J. of Montana West (Deposition of Nathaniel Dean Hoffner, dated May 1, 2013, at 32-33); Ex. "E" to Newell's Resp. to Mot. for Sum. J. of Montana West (John Giambrone Dep., 5/17/13, at 65-66).

land. *Davis*, 652 N.E.2d at 568–70. In each case, and in other similar cases, the courts have consistently rejected these theories, emphasizing that because the plaintiff's injury occurred on a public roadway and outside of the landowner's premises, no duty to provide a safe condition on those premises was implicated. *See Davis*, 652 N.E.2d at 570; *Allen*, 625 A.2d at 1329.

Of the few cases that address the purportedly unsafe condition alleged by Newell here—inadequate parking—most decline to recognize a new duty giving rise to liability to victims injured off the landowner's premises. One of the cases most directly on point is the Rhode Island Supreme Court's decision in *Ferreira*. Three parishioners drove to midnight Christmas Eve services and parked at a lot across the street from the church. As they were leaving the services and crossing the street to reach their car, two of them were struck by a vehicle and one of them died. One of the theories asserted as a basis for liability was that "the church did not provide adequate on-site parking for parishioners" and therefore "should have foreseen that a substantial number of parishioners would park in the nearby lot that was separated from the church by a public highway, and would have to cross that public highway to reach their vehicles in the dark late at night after Mass." *Ferreira*, 636 A.2d at 688. The court rejected that theory, holding that "[n]either the lack of adequate parking nor the foreseeability that many parishioners would park in the nearby lot requiring them to cross [the street] warrants imposition of a duty" on the church. *Id.*

In reaching this conclusion in *Ferreira*, the court relied on a California decision that declined to hold a landowner liable for fatal injuries resulting from a crime in an adjacent parking lot. The decedent in *Steinmetz v. Stockton City Chamber of Com.*, 169 Cal.App.3d 1142, 214 Cal.Rptr. 405, *review denied* (Cal. 1985), attended a "mixer" held on the Chamber of Commerce's premises in an industrial park. Several hundred people attended the mixer, but the Chamber had only 20 or 25 parking spaces on its premises. The invitees, including the decedent, therefore parked elsewhere in the industrial park. When the decedent returned to her car, she was fatally stabbed by an unknown assailant. 214 Cal.Rptr. at 406. Her estate claimed the Chamber breached a duty of care by failing to provide a safe place to park, but the court rejected that argument:

> [I]t is impossible to define the scope of any duty owed by a landowner off premises owned or controlled by him. The instant case cannot be distinguished from that of a movie theater showing the latest academy award winning movie, or a department store holding its annual clearance sale, neither of which is able to afford sufficient parking for the number of invitees seeking to enter the premises. We are aware of no obligation upon the movie theater or department store owner to provide additional lighting on the city streets or hire security guards to patrol those streets for the safety of its invitees. Nor can the instant situation be distinguished from that of a homeowner whose business guests must park on city streets because there is not sufficient parking on the premises. It is not legally incumbent upon the homeowner to provide additional lighting or hire security guards to escort his guests to their cars.

*Id.* at 408.

In *Santoleri v. Knightly*, 174 Misc.2d 339, 663 N.Y.S.2d 505 (Sup. Ct., Monroe Cnty. 1997), a New York court reached the same result on facts strikingly similar to those in *Ferreira*. The plaintiffs sought to

attend a funeral at the defendant's funeral home, but the parking lot was full. An employee of the funeral home instructed the plaintiffs to park at another lot across the street. After the plaintiffs did so, they were struck by a passing motorist as they were crossing the street from the lot to the funeral home. The court dismissed the plaintiffs' lawsuit against the funeral home, holding that the home owed no legal duty to pedestrians injured on the street. 663 N.Y.S.2d at 506, 508. In rendering its holding, the court noted that New York does not follow the rule that landowners owe a heightened duty of care to business invitees. *Id.* at 508.[15]

Two New Jersey decisions have reached opposite results on this issue. In ***Ross v. Moore***, 221 N.J.Super. 1, 533 A.2d 398 (App. Div. 1987), an adult education student was injured while on her way to attend classes and sought to sue the school under the state's Tort Claims Act. Because there was no available parking space on the school's lot, the plaintiff had been driven to a shopping center parking lot across the street from the school, and she was struck by a car while crossing the street to get to the school. 533 A.2d at 399. The court described the plaintiff's theory of recovery as follows:

> On appeal plaintiff's primary theory of governmental tort liability is novel. She argues that the school's motion for summary judgment should have been denied under N.J.S.A. 59:4–2 because public property owned or controlled by the school was in a dangerous condition proximately causing her injury. Recognizing that Warwick Road itself is not owned or controlled by the school, plaintiff's attenuated argument, without sup-

porting authority, is that the school property itself was in a dangerous condition because of its limitation to about 250 parking spaces and the reasonable foreseeability that an adult evening student en route to class, like plaintiff unable to park at the school, would park in the shopping center parking lot opposite the school and from there jaywalk across Warwick Road and be struck by a vehicle.

*Id.* at 400. The court observed that "no danger inhered in the school's failure to provide sufficient parking spaces for adult evening students except in combination with the reasonable foreseeability of an accident to an adult evening student forced to park elsewhere." *Id.* Because the school neither owned the roadway where the accident took place nor the shopping center lot where the plaintiff parked, the court held that the school could not be held liable on the plaintiff's theory. *Id.* at 400–01.

In ***Mulraney v. Auletto's Catering***, 293 N.J.Super. 315, 680 A.2d 793 (App. Div. 1996), however, the same court permitted liability on similar facts. Florence Mulraney attended a bridal fair at the defendant's catering facility. Unwilling to wait in line for the valet parking service the defendant provided, she tried to park in a forbidden portion of the defendant's parking lot and, after she was told she could not do so, decided to park on the opposite side of an adjoining highway. She was killed by a motorist while trying to cross the highway on her way back to her car after leaving the bridal fair. Her estate sued the catering facility, contending that it did not sufficiently provide warnings and take other measures for the safety of its

---

15. *See also Snyder Elevators, Inc. v. Baker*, 529 N.E.2d 855, 857–58 (Ind. App. 1988) (grain elevator facility not liable for accident caused by unsafe street conditions caused by need for trucks to line up on the street as a result of the grain facility's lack of sufficient parking spaces).

attendees, and the New Jersey appellate court agreed. 680 A.2d at 794–95.

The court in *Mulraney* began by discussing the duty of a business to provide reasonable care to its invitees, but stated that in New Jersey there had been a "gradual change in the law in favor of a broadening application of .a general tort obligation to exercise reasonable care against foreseeable harm to others." 680 A.2d at 795 (quoted citation omitted). The court then departed from "the common law methodology of premises liability" and focused instead on a "fact-specific" analysis of "whether the imposition of [a duty of reasonable care] satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Id.* at 796 (quoted citation omitted). In its analysis, the court weighed several factors, including the parties' relationship, the nature of the risk, the opportunity and ability of the defendant to exercise care, and the public interest in the plaintiff's proposed solution. *Id.* The court held that this analysis led it to conclude "that a business proprietor has a duty, at least under some circumstances, to undertake reasonable safeguards to protect its customers from the dangers posed by crossing an adjoining highway to an area the proprietor knows or should know its customers will use for parking." *Id.* The court held that Section 349 of the Second Restatement did not preclude this result because the claim "is not based upon an alleged unsafe condition of the highway but rather upon a transient dangerous condition resulting from [the caterer's] conduct of a special function at its premises." *Id.* at 797. It distinguished its earlier holding in *MacGrath* on a similar basis. *Id.* at

796–97. And it dismissed its contrary holding in *Ross* on the ground that *Ross* was a Tort Claims Act case, adding that insofar as *Ross* otherwise supported a different result, "we respectfully disagree." *Id.*

We note that the Court in *Mulraney* did not actually base liability on a breach of a duty by the caterer to provide additional parking. Instead, the court allowed recovery on a theory closely resembling the arguments rejected in *Allen, Davis*, and similar cases about a landowner's supposed duty to erect warning signs or take other measures to protect invitees from dangers on adjoining roadways. To that extent, the decision is at odds with the great majority of authorities in this area. Noting the *Mulraney* decision's departure from common law premises liability, the trial court in this case concluded that *Mulraney* is based on "New Jersey law [that] is so different from Pennsylvania's on this subject as to render *Mulraney* inapt." Trial Ct. Op., 4/17/14, at 14 (footnote omitted). Other courts also have rejected *Mulraney*'s rationale, even in such jurisdictions as New York, which (like New Jersey) has departed from traditional premises liability. *See Santoleri*, 663 N.Y.S.2d at 508; *see also Rhudy v. Bottlecaps Inc.*, 830 A.2d 402, 406 n.14 (Del. 2003); *Kuehn v. Snohomish Cty. Pub. Transp. Benefit Area Corp.*, 109 Wash. App. 1046 (2001) (unpublished opinion).[16]

Not surprisingly, Newell relies heavily on *Mulraney* and contends that the trial court erred in failing to follow it. He argues that rather than differing from Pennsylvania law, the multi-factor analysis applied in *Mulraney* resembles that used by Pennsylvania courts to ascertain whether a duty exists under *Althaus ex rel. Althaus v. Cohen*, 562 Pa. 547, 756 A.2d 1166, 1169

**16.** The Washington opinion is not precedential, but citable for its persuasive value under that court's local rules. Wash. Gen. R. 14.1(a). We consider the opinion as part of our effort to assess the general state of the law in this area. *See In re McKinney*, 67 A.3d 824, 832 n.14 (Pa. Super. 2013).

(2000), and that such an analysis favors recognition of a duty to Decedent here. Newell's Brief at 21-25.[17] In contrast, the trial court held that even if an *Althaus* analysis were applicable, the result would still be that Montana West owed no duty to Decedent. Trial Ct. Op., 8/5/14, at 13-15. Montana West argues that recognition of a duty similar to that advocated by Newell and recognized in *Mulraney* "would result in a litany of litigation that would unfairly burden a property owner." Montana West's Brief at 18. After careful consideration, we conclude that the duty advanced by Newell is contrary to Pennsylvania law and that Pennsylvania law should not be changed to recognize such a new duty.

We begin with the Supreme Court's admonition that, "unless the justifications for and consequences of judicial policymaking are reasonably clear with the balance of factors favorably predominating, we will not impose new affirmative duties." *Seebold*, 57 A.3d at 1245. The Court has said it is "reluctan[t] to impose new affirmative duties," especially where there is an existing and longstanding framework establishing what duties generally apply, and that a request to add a new duty to such an existing framework "require[s] concrete and substantial justification." *Id.* at 1246.

The Supreme Court's admonition has particular force here, because the new duty Newell advocates will apply to landowners' relations with their business invitees. Although this Court has occasionally encouraged their abandonment, *see, e.g.*, *Updyke v. BP Oil Co.*, 717 A.2d 546, 551 n.1 (Pa. Super. 1998); *Antonace v. Ferri Contracting Co.*, 320 Pa.Super. 519, 467 A.2d 833, 838 (1983), the common-law rules

of premises liability, under which a landowner's required standard of care varies according to whether he is dealing with a trespasser, licensee, or invitee, remain engrained in Pennsylvania law. *See, e.g.*, *Jones v. Three Rivers Mgmt. Co.*, 483 Pa. 75, 394 A.2d 546, 552 (1978); *Emge v. Hogosky*, 712 A.2d 315, 317 (Pa. Super. 1998). The rules are familiar and longstanding and, to a substantial extent, have been codified in the Second Restatement of Torts. *See Jones*, 394 A.2d at 552 (citing Restatement (Second) of Torts §§ 328-343B). The new duty that Newell advocates is not a part of those established rules.

A comparison to Section 343 of the Second Restatement, one of the main provisions Newell cites in support of his claim, *see* Newell's Brief at 12 & n.45, illustrates the difference. Section 343 provides:

**Dangerous Conditions Known to or Discoverable by Possessor**

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Liability of a "possessor of land" under this provision depends on whether the harm to his invitee is caused "by a condi-

---

**17.** Newell does not actually cite *Althaus*, but instead cites three decisions that apply the *Althaus* analysis. *See* Newell's Brief at 23 n.83 (citing *R.W. v. Manzek*, 585 Pa. 335, 888 A.2d 740, 747 (2005); *Matharu v. Muir*, 29 A.3d 375, 384–85 (Pa. Super. 2011), *vacated*, 621 Pa. 106, 73 A.3d 576 (2013); and *Montagazzi v. Crisci*, 994 A.2d 626, 631 (Pa. Super. 2010)).

tion on the land," and the section therefore does not authorize imposition of liability for dangerous conditions on the land of others. This was a primary basis for the Supreme Court's decisions in *Scarborough* and *Gardner*, where the Court held there was no duty because the dangerous condition that caused the boys' injuries was on the adjoining rail tracks, and not on the City properties with the holes in the fences. *See Gardner*, 573 A.2d at 1019 ("[T]he argument in favor of finding a duty as against the city assumes that the unrepaired fences are themselves the instrumentalities of harm. They were not."). Newell's theory of liability, however, would make landowners liable for dangerous conditions on *someone else's land*, merely because a lack of parking on the landowner's premises caused the plaintiff to go to that other property and encounter whatever risks resided there, even though the landowner did not create those risks. The *Scarborough* and *Gardner* decisions weigh heavily in counseling us to reject Newell's theory of recovery here.

In this connection, we note that the main decision on which Newell relies, *Mulraney*, was decided under a legal approach that rejected the premises liability rules that are a part of well-settled Pennsylvania law. We therefore agree with the trial court that *Mulraney* is inapposite and we decline to follow it. The policy analysis applied in Pennsylvania is much more closely aligned with that reflected in the New Jersey Appellate Division's contrary decision in *Ross*.

More broadly, we believe there is considerable force to Montana West's argument that the alteration of Pennsylvania premises liability rules that would result from creation of the new duty Newell advocates would significantly burden property owners across Pennsylvania by exposing many of them to greatly expanded poten-

tial liabilities. *See* Montana West's Brief at 18-19. Numerous small businesses in towns throughout the Commonwealth—dry cleaners, retail merchants, pizza shops—have no parking facilities on their premises at all. They rely instead on municipal street parking or public or private lots or garages. Newell's theory suggests that their lack of on-site parking may subject such businesses to potential liability for injuries to invitees who are at or on their way to off-site parking facilities.

Of course, Montana West *did* provide on-site parking, but Newell argues that Montana West nevertheless should be held liable because Newell's expert evidence will show that the number of parking spaces on Montana West's lot was insufficient for major events. *See* Newell's Brief at 18-19. Montana West's unrebutted evidence, however, is that it had at least the number of spaces on that lot (231) that had been required by local zoning authorities. *See* Montana West's Brief at 3, 11. Therefore, even for a local business with onsite parking that is compliant with local government edicts, Newell's theory would still create a potential risk of liability because the business did not provide more parking spaces than the local authorities required.

The potential exposure that would result from acceptance of Newell's new duty rule would be broad in other respects too. Newell focuses his argument here on preventing the risk that an invitee will park on the other side of a dangerous highway, but, as the *Steinmetz* decision illustrates, acceptance of his theory could expose a landowner to liability if an invitee elects to park at any other dangerous location as well. *See Steinmetz*, 214 Cal.Rptr. at 408. The choice to park in the DHL lot was that of Decedent, though the parties dispute whether there were sufficient available alternatives to make parking else-

where a viable option.[18] In other cases, an invitee's parking selection might make a landowner liable for injuries from parking at an offsite garage that has structural deficiencies or, as in *Steinmetz*, in a lot at a location that is prone to crime, so long as the landowner knew or should have known that those places were dangerous. In *Gardner*, the Supreme Court declined to recognize a new legal duty that would create liability for injuries to the boys that were caused by their "voluntary exposure to an obvious hazard over which the city had no control." *Gardner*, 573 A.2d at 1021. Newell's theory similarly would impose liability despite a landowner's lack of control over which alternate parking facility its invitee selected.

In light of *Scarborough* and *Gardner*, we conclude that Newell's theory of liability is contrary to the law of Pennsylvania and that the lack of sufficient parking at Montana West did not impose any existing duty on Montana West to protect Decedent from the dangers of parking elsewhere.[19] And, in view of the significant change adoption of the duty advocated by Newell would make to established Pennsylvania law regarding businesses' duties to their invitees, as well as the lack of substantial support for creation of this new duty in the precedents of other jurisdictions, we believe that the Supreme Court of Pennsylvania would not be persuaded to engage in "judicial policymaking" that would create this new affirmative duty in this case. *See Seebold*, 57 A.3d at 1245. Newell has not met his burden to show that we should adopt this new duty as part of the law of the Commonwealth, and we therefore decline to do so.

Finally, we agree with the trial court that if consideration of Newell's theory requires an analysis under the *Althaus* rubric, the conclusion would be the same.[20]

**18.** Newell claims the DHL lot was the most viable alternative, and he points to evidence that Montana West invitees had used it on other occasions. *See* Ex. "C" to Newell's Resp. to DHL's Mot. for Sum. J. (expert report of Kevin O'Connor, P.E., 12/2/13, at 9 (citing statement by DHL mechanic that "bar customers were parking in the DHL lot after hours without the shop's permission")). The trial court, "[v]iewing the facts in the light most favorable to [Newell]," concluded that "patrons of Montana West sometimes parked their cars on the DHL parking lot." Trial Ct. Op., 4/17/14, at 18. The evidence was disputed whether Decedent parked in the DHL lot because of a lack of space in the Montana West lot or for other reasons. Montana West presented disputed evidence that Decedent may have parked in the DHL lot because he liked to park in out-of-the-way places to avoid having others see markings on his car. Trial Ct. Op., 8/5/14, at 6 n.3 (citing Hoffner Dep., 5/1/13, at 41, 44-45).

**19.** In reaching this conclusion, we disagree with Newell's reliance on Sections 323, 343, 343A, and 364 of the Second Restatement as support for his theory of liability. We discuss Section 323 in the next segment of this opinion. Sections 343, 343A, and 364 authorize liability for injuries directly caused by hazardous conditions on the landowner's property. Section 364, specifically, imposes a duty on possessors of land to protect "others outside of the land" from "physical harm caused by a structure or other artificial condition on the land." Even if this Court accepts the argument that insufficient parking is an artificially dangerous condition, the Supreme Court's decision in *Gardner*, 573 A.2d at 1017, still would preclude relief because the suspect condition on Montana West's land did not proximately cause Decedent's injury and death. In short, the situations contemplated by Sections 323, 343, 343A, and 364 simply are not present here.

**20.** Newell makes only a perfunctory argument under *Althaus*, and, as we previously noted, does not even cite *Althaus* as precedent. *See* Newell's Brief at 23-25. Although an *Althaus* argument requires creation of a record that would inform the broad policy judgments that must underlie creation of any new duty, *see Seebold*, 57 A.3d at 1250–51, no such record was made here. We therefore could hold that any argument under *Althaus*

The Supreme Court held in *Althaus* that creation of a new duty requires consideration of: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Althaus*, 756 A.2d at 1169. "Courts are not required to weigh each factor equally and no individual factor is dispositive." *Walters*, 144 A.3d at 114; *Charlie v. Erie Ins. Exchange*, 100 A.3d 244, 251 (Pa. Super. 2014).

■■■■ Here, the relationship between the parties is that of a business to its invitee.[21] "The duty owed to a business invitee is the highest duty owed to any entrant upon land," and "[t]he landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care." *Emge*, 712 A.2d at 317. But although the duty owed to an invitee is high, it also is circumscribed because, as already discussed, it is defined by longstanding rules that generally limit the duty to hazards on the land of the landowner and not to haz-

ards outside of such land, such as on adjoining roadways—rules to which decisions like *Scarborough* and *Gardner* closely adhere. The relationship between the parties therefore does not clearly point toward establishment of a new duty.

Newell has provided little discussion of how the social utility prong of *Althaus* applies here, and without further development by the parties, we fail to see how this factor tips the balance in either direction. Decedent was attending a concert—a worthwhile activity, but one not necessarily essential to society. The analysis might differ if the establishment were a medical facility that provides emergency services and where onsite parking may be more of a necessity. Overall, we conclude that this factor is neutral.

The nature of the risk certainly is significant, and Newell argues that past accidents on Route 309 and past conduct of Montana West to deter its customers from parking on the other side of Route 309 prove that the risk was both foreseeable and foreseen.[22] But foreseeability of a risk may be much less clear in other parking situations because, as discussed above, the typical landowner usually has no knowledge of where its customer would decide to

has been waived. We nevertheless discuss the *Althaus* factors for completeness.

21. We disagree with the trial court's view, Trial Ct. Op., 8/5/14, at 13, that Decedent ceased to be an invitee because the fatal accident occurred as he was leaving Montana West. An invitee remains an invitee on the way into the business and on the way out of it. *See Trude v. Martin*, 442 Pa.Super. 614, 660 A.2d 626, 631 (1995) (plaintiff did not lose his status as an invitee and become a trespasser merely by exiting the business).

22. Newell notes that another Montana West customer had previously been fatally injured crossing the same area of the highway as Decedent. *See* Ex. "T" to Newell's Resp. to Mot. for Sum. J. of Montana West (Common-

wealth of Pennsylvania Police Crash Report Form, 11/24/06, and Richland Township Police Department Incident Report Form 59-06-04272, 11/24/06). Montana West responds (without citation to support in the record) that this earlier fatality involved a local resident and was unrelated to parking issues. Montana West's Brief at 17. Defendant John Giambrone testified at his deposition that he was aware of that fatality and knew that customers walked across Route 309 to and from Montana West, though he added that he had never seen any of Montana West's customers park in DHL's parking lot. Ex. "E" to Newell's Resp. to Mot. for Sum.. J. of Montana West (John Giambrone Dep., 5/17/13, at 41, 59-61). We discuss Montana West's past conduct to deter parking on the other side of Route 309 in the next segment of this opinion.

park if its lot were full, or why the customer would choose one location over another. There would be no reason to assume that the customer would decide to choose an alternative parking location that was obviously dangerous if other facilities were available. We also note that "foreseeability is not alone determinative of the duty question." *Seebold*, 57 A.3d at 1249; *see Williams ex rel. Williams v. Lewis*, 319 Pa.Super. 552, 466 A.2d 682, 685 (1983).

As already discussed, we believe the consequences of creating the duty Newell advocates will be adverse and significant for a large number of small businesses in the Commonwealth. We believe this is a very important factor in this analysis.

We conclude that the overall public interest does not call for creation of this new duty. There are other and more direct ways of protecting against harm to business invitees from the hazards on others' property that are implicated here. The Commonwealth is already responsible for the safety of Pennsylvania's highways, and motorists are responsible for driving safely on them.[23] Similarly, the owners of parking garages and lots are subject to a variety of safety regulations that are designed to protect users of those facilities. Pennsylvania tort law already provides means of obtaining redress from such responsible parties.

On this record, we do not believe the overall public interest requires creation of a new duty to provide adequate parking that would subject landowners throughout the Commonwealth to potentially broad liabilities for harms on others' properties that those landowners may have only limited if any means to prevent. As the court in

*Charlie* observed, "[t]his case, focused on the individual interests of [the plaintiff], does not necessarily translate into the broader realm of whether this Commonwealth's interests are best served by imposing [this new] duty upon the public." *Charlie*, 100 A.3d at 259. Given the scant argument and shallow record presented by Newell, we are not persuaded to impose the significant new duty that Newell advocates. *See id.* at 260.

For all of these reasons, we join the majority of other courts that have considered this issue and hold that a landowner may not be held liable to a business invitee for injuries that occur to the invitee on an adjoining highway or other property as a result of breach by the landowner of an alleged duty to provide sufficient parking on its own premises. We hold that no such duty arises under Pennsylvania law that would form the basis for a negligence action in these circumstances.

### Voluntary Assumption of Duty Through Prior Safety Measures

■ Finally, Newell claims that Montana West took safety precautions for its patrons in the past and thereby assumed a duty of care to protect its invitees from accidents on Route 309. According to Newell, Montana West (1) had employees "patrol[ ] the parking lot across the street" to dissuade its invitees from parking there, Newell's Brief at 4-5 & n.9 (citing Deposition of John Giambrone, 5/17/13, at 54-55),[24] (2) "us[ed] a private security company to assist with pedestrian traffic," *id.* at 8 & n.33 (citing Tr. of Statement of John Giambrone, 10/11/12 ("Giambrone State-

---

**23.** We note that in light of the obvious dangers to pedestrians, the Vehicle Code forbids walking along or across a highway and other forms of jaywalking. *See* 75 Pa.C.S. §§ 3543-3544.

**24.** John Giambrone's deposition was filed as Exhibit "E" to Newell's Response to Montana West's Motion for Summary Judgment.

ment"), at 11), and (3) "used its DJ to announce to patrons not to park across the street," *id.* at 5 & n.11 (citing John Giambrone Dep. at 52).

Newell's complaint did not allege that Montana West voluntarily assumed a duty of care. Rather, it alleged that Montana West "failed to do anything to protect customers who were crossing the street to get to [its] business." Compl. ¶ 52; *see id.* ¶¶ 59, 64, 91. The evidence to which Newell now cites in his brief fails to show any consistent or ongoing pattern of conduct by Montana West to voluntarily undertake safety precautions regarding invitees parking outside its premises.

In fact, a review of the testimony by Defendant John Giambrone (one of Montana West's owners) that is relied upon by Newell shows that the evidence falls short of what Newell claims about it. Giambrone specifically denied under oath that Montana West "patrolled" the DHL lot or other areas along Route 309, and he did not assert that Montana West security personnel helped pedestrians cross Route 309. *See* John Giambrone Dep., 5/17/13, at 40-41, 43, 54-55; Giambrone Statement at 11.[25] According to Giambrone, there was only one time when Montana West took actions to prevent parking on the other side of the highway—"a college night" when Giambrone became concerned about possible underage drinking and littering of

beer bottles in a lot other than the DHL lot. *See* John Giambrone Dep., 5/17/13, at 39-45. Giambrone testified that it was during that same "college night" that he may have asked Montana West's disk jockey to make a public announcement about parking across the highway, although he said he could not clearly recall that. *See id.* at 52-53.[26] Newell thus failed to present evidence that Montana West adopted a program to regularly protect patrons from the dangers of crossing Route 309 or that it advertised any such program to its invitees.

The decisions that reject imposition of a duty of care for business invitees on an adjoining highway also reject the argument that occasional past voluntary measures to protect patrons, like those alleged here, somehow change application of the no-duty rule. In *Ferreira*, for example, the church had sometimes asked local police to control traffic following church services, but had failed to do so for the Christmas Eve mass after which the fatal accident occurred. The plaintiffs argued that "even if the church did not have a duty to patrol traffic, the church assumed such a duty by requesting traffic control by the police on prior occasions" and it therefore "had a duty to warn parishioners when the church failed to perform its duty on other occasions." *Ferreira*, 636 A.2d at 688. The

---

**25.** Giambrone gave an *unsworn* statement to an insurance adjuster in 2012 that contains this sentence: "we have our own patrol car that drives around the parking lot across the street to tell people not to park there." Giambrone Statement at 11. Though the full statement was unclear, Giambrone seemed to explain in it that the car patrolled Montana West's own lot and that it went to a lot across the highway only if a security officer actually saw patrons parking there without permission ("if people park across the street, he goes and tells them they don't have permission to do that"). *Id.* at 11-12. When asked about his statement in a later *sworn* deposition, Giam-

brone testified that Montana West did *not* patrol the lot on the other side of the highway and that it only patrolled its own lot. John Giambrone Dep., 5/17/13, at 39-40, 53-55, 79.

**26.** Two other witnesses testified that they did not recall ever hearing a disc jockey at Montana West make such an announcement about parking. Ex. "F" to Newell's Mot. for Summ. J. of Montana West (Deposition of Ryan W. Naugle, 10/11/13, at 62); Ex. "J" to Newell's Mot. for Summ. J. of Montana West (Deposition of Danielle Masleny, 10/18/13, at 14).

court disagreed, stating, "The same principles that militate against the duty to control traffic on public highways would also preclude the gratuitous assumption of such a duty." *Id.* It added that any such assumption of the duty "would be contrary to public policy," because police control is a public function. *Id.*

Newell relies on Section 323 of the Second Restatement of Torts, which provides that if someone voluntarily undertakes to render services to another for their protection, that person is liable for negligence in performing the duty that it voluntarily assumed. Newell's Brief at 10-11.[27] The Supreme Court of Pennsylvania has adopted the rule of Section 323. *See Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 746–47 (1984). The Court has emphasized, however, that an invitee "may rely upon a program of protection only within the reasonable expectations of the program" that the person has voluntarily provided. *Id.* at 747. Thus, we have held that a business that voluntarily offers its invitees services in addition to those that it has a legal duty to provide may be held liable for negligent provision of those services only to the extent of its voluntary undertaking and has no duty beyond that undertaking. *See, e.g., Kerns v. Methodist Hosp.*, 393 Pa.Super. 533, 574 A.2d 1068, 1075–78 (1990) (hospital that voluntarily provided limited building security in its nursing residence had no duty to pizza delivery man who was robbed and physically assaulted outside the building's gate because the hospital did not voluntarily assume a duty of protection in that situation); *see also Kelly v. Methodist Hosp.*, 444 Pa.Super.

427, 664 A.2d 148, 151 (1995) (hospital did not voluntarily assume doctors' duty to obtain informed consent forms from patients by adopting a rule requiring that such forms be signed); *see generally James v. Duquesne Univ.*, 936 F.Supp.2d 618 (W.D. Pa. 2013) (general discussion of voluntary assumption of duty in Pennsylvania). We also note that under Section 323, the mere fact that a party gratuitously provides a service does not obligate that party to continue to provide the service indefinitely and that the party is free to abandon the undertaking. Rest. 2d Torts § 323, Com. *c.*

Under these decisions, we agree with the trial court that there is no basis to hold Montana West liable for breaching a duty that it voluntarily assumed to protect its invitees from accidents on Route 309. Even if Montana West engaged in some protective conduct on some sporadic prior occasions, such conduct did not rise to the level of voluntary assumption of a legal duty that obligated Montana West to provide protective services at all later events. Moreover, there is no evidence of any promise or undertaking by Montana West to Decedent, implicit or otherwise, to personally provide Decedent with safe passage to and from the DHL property or to protect him from an accident on Route 309 if he parked on the DHL property.

In addition, as cases like *Ferreira* point out, Newell's theory of a voluntary assumption of a duty to protect patrons from highway accidents raises significant public policy concerns, because highway safety is a governmental responsibility. *See Fer-*

---

**27.** Section 323 states:
   One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to

exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other's reliance upon the undertaking.

*reira*, 636 A.2d at 686–89. There is no claim or evidence here that the Commonwealth ceded that responsibility to Montana West with respect to accidents on Route 309 adjacent to Montana West's property.

The Supreme Court's decision in *Leary v. Lawrence Sales Corp.*, 442 Pa. 389, 275 A.2d 32 (1971), illustrates the need to be attentive to established allocations of duties. In that case, the owner of a shopping center retained possession and control of the central aisle of a grocery store in the shopping center complex, but the grocery store nevertheless had its employees clean debris from that central aisle. While in that central aisle, the plaintiff slipped and fell on debris on the floor. 442 Pa. 389, 275 A.2d at 33. The plaintiff argued that the grocery store was liable because it "voluntarily assumed the duty of keeping safe the entrance and exit aisle to its grocery store," *id.* at 36, but the Supreme Court rejected that argument. The Court concluded that the shopping center had not (1) "ever released its control" over the central aisle, (2) elected to reduce the cleaning services it was obligated to provide under the lease, or (3) agreed that the grocery store would "keep the area clean." *Id.* Therefore, despite the store's actions, there was insufficient proof of a voluntary assumption by the grocery store of a duty that belonged to the shopping center.[28]

Here, analogously, Montana West's purported prior precautionary actions to dissuade invitees from parking on the other side of Route 309 did not amount to a voluntary assumption of control over the highway so as to impose the duty of care and ensuing liability on Montana West for any injuries occurring there. Newell failed to identify any material issues of fact suggesting the Commonwealth released control over the highway, abrogated its duty to keep the highway safe, or conceded that Montana West could assume limited responsibility of keeping the highway safe for pedestrians. *See Leary*, 275 A.2d at 36.

As the trial court accurately noted, "under Pennsylvania law ... there is no duty upon the possessors of property abutting a state highway such as Route 309, to protect or warn individuals of the dangers of crossing the highway." Trial Ct. Op., 4/17/14, at 21. In light of the clear law on this specific question, and upon reviewing the record evidence cited by Newell, we find no error or abuse of discretion in the trial court's conclusion that Montana West assumed no such duty voluntarily.

### Conclusion

For all of these reasons, we hold that the trial court did not err in concluding that Montana West did not owe a duty to Decedent on the facts of this case that can give rise to liability for negligence. We therefore affirm the entry of summary judgment in favor of Montana West.

Order affirmed.

---

**28.** *Accord Underhill v. Shactman*, 337 Mass. 730, 151 N.E.2d 287, 290 (1958) (shopping center tenant not liable to customer who fell in parking lot that landlord was obliged to maintain, notwithstanding fact that tenant could have provided the safety precaution of parking attendants).